UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re:                                              Chapter 11

385 Greenwich Street LLC                            Case No. 25-41127-NHL

                              Debtor.
--------------------------------------------------------------x

## NOTICE OF TRANSCRIPT OF AUCTION

        **PLEASE TAKE NOTICE** that annexed is a true and correct copy of the transcript of the Auction sale conducted on March 25, 2025.

Dated:  New York, New York
       March 27, 2025

                             Goldberg Weprin Finkel Goldstein LLP
                             Attorneys for the Debtor
                             125 Park Avenue, 12th Floor
                             New York, New York 10017
                             (212) 221-5700

                             By:     /s/ *J. Ted Donovan, Esq.*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------------X

AUCTION                    Chapter 11
                           Case No. 25-41127-NHL

IN RE: 385 GREENWICH STREET, LLC,

            Debtor.
----------------------------------------------X


    ORDER UNDER BANKRUPTCY CODE SECTIONS 363 (b)

AND (f) AND BANKRUPTCY RULES 2002 AND 6004: (I)

AUTHORIZING THE SALE OF THE DEBTOR'S REAL PROPERTY

AT 385 GREENWICH STREET, NEW YORK, NY TO THE HIGHEST

AND BEST BIDDER AT A PUBLIC AUCTION SALE




            DATE:  March 25th, 2025

            TIME:  3:25 p.m. – 5:01 p.m.




    AUCTION ON THE RECORD, held via

videoconference at BELKIN, BURDEN, GOLDMAN, LLP, 60

East 42nd Street, 16th Floor, New York, New York

10165, before BRANDY DUXBURY, a COURT REPORTER and

NOTARY PUBLIC in and for the State of New York.

1 | REMOTE APPEARANCES:

2 |
   | Goldberg Weprin Finkel Goldstein LLP
3 | Kevin Nash, ESQ., Auctioneer

4 | BELKIN, BURDEN, GOLDMAN, LLP
   | Counsel for Bidder
5 | JAY SOLOMON, ESQ.
   | DAN ALTMAN, ESQ.
6 | GREGGORY SPATZ, BIDDER

7 |
   | WACHTEL MISSRY, LLP
8 | Counsel for 385 Greenwich Street, LLC
   | ELI DWECK, ESQ.
9 | ZACHARY GINDI, PRINCIPAL OF 385 GREENWICH STREET,
   | LLC
10 |
   | HUGHES HUBBARD & REED, LLP
11 | Counsel for 385 Greenwich Street, LLP
   | CHARLES COHEN, ESQ.
12 |

13 | ALSTON & BIRD
   | Counsel for Ladder Capital
14 | JAMES VINCEQUERRA, ESQ.
   | WILLIAM HAO, ESQ.
15 | BRIAN LAINE, ESQ.
   | JOSEPH NATT, ESQ.
16 | ELIZABETH MURPHY, ESQ.
   | ROBERT PEARLMAN, LENDER
17 | MIKE ALEXANDER, MANAGING DIRECTOR

18 |
   | MEISTER SEELIG & FEIN
19 | Counsel for 77 Woodedge, LLC
   | JESSE YOUNG, ESQ.
20 | ALEXANDER COLAITIS, BIDDER

21 |
   | MORITT HOCK & HAMROFF, LLP
22 | Counsel for Randal Gindi and 385 Greenwich Street,
   | LLC
23 | BRIAN DAUGHNEY, ESQ.
   | RANDAL GINDI
24 |

25 |

1    REMOTE APPEARANCES (Cont.):

2


3    SASSON LAW, PLLC
     Counsel for 385 Greenwich Street, LLC
4    MOSHE SASSON, ESQ.

5


6    KEN ALLEN, CURRENT TENANT, UNIT 2
     RORY ALLEN, BROTHER OF KEN ALLEN
7    PJG ESTATE, OBSERVING WITH KEN ALLEN

8

9

10

11

12

13

14                    (All parties appeared remote via

15          Zoom individually or in the conference

16          room at BELKIN, BURDEN, GOLDMAN, LLP, 60

17          East 42nd Street, 16th Floor, New York,

18          New York 10165.)

19

20

21

22

23

24

25

1          REMOTE PROCEEDINGS

2          Tuesday, March 25th, 2025, 3:25 p.m.

3              MR. NASH:  Kevin Nash for the

4     debtor.  I appreciate everybody coming this

5     afternoon.  I did supply coffee and

6     Munchkins.  I expect it to be gone by the

7     time this auction is over, and we're going

8     to keep the bidding open until the Munchkins

9     are gone.

10             In all seriousness, we're here on

11    an order of the Bankruptcy Court, Judge

12    Lord.  She's scheduled on my motion an

13    auction sale for today on the 385 Greenwich

14    Street property which is owned by the

15    Greenwich Street debtor before for the

16    United States Bankruptcy Court, the Eastern

17    District of New York.

18             Under the terms of the bidding

19    procedures, I received three initial offers

20    for bids for proposed contracts.  We're

21    going to go over each of them before we get

22    started with bidding.

23             I received a contract from Zach

24    Gindi, who's already in contract with the

25    debtor.  I received a contract from Greg

1     Spatz yesterday, and I've been in touch with

2     his attorney, Jay Solomon, and I received

3     what I call the 1031 bidder contract from

4     Mr. Colaitis.

5              Is that how I pronounce your name?

6     Where is he?

7              MR. COLAITIS:  That's how you

8     pronounce it.

9              MR. NASH:  Okay, Mr. Colaitis.  So

10    those are the three contracts I received.

11    They had -- under the terms of the bid

12    procedures, the contracts had to be marked

13    up.  I understand Mr. Spatz gave me a

14    redline.  Mr. Gindi didn't make any material

15    changes to his contract.

16              But before we get going,

17    Mr. Colaitis, I saw your contract, and I do

18    have certain questions I'd like to pose to

19    you so I understand what you're bidding on.

20              Is that okay?  You can have

21    Mr. Young answer them, or you can answer

22    them.

23              MR. COLAITIS:  Okay.

24              MR. NASH:  Now, the first thing

25    that caught my attention, in the form

1    contract there's an exclusion for accounts

2    receivable and pre-closing rents, and that

3    exclusion means that anything that is due

4    prior to closing from tenants remains

5    property of the bankruptcy estate and the

6    seller.  That's excluded from the sale.

7    Even though there's an assumption of

8    assignment of leases, the pre-closing rents

9    are not part of the sale.  I got an

10   acknowledgment from Mr. Spatz on that, and I

11   got an acknowledgment from Mr. Gindi on

12   that, but it looks to me -- although it's

13   not in black line -- you struck that portion

14   out.

15             Is it your bid includes

16   pre-closing rents or excludes pre-closing

17   rents?

18             MR. YOUNG:  It's Jesse Young,

19   counsel for Alex Colaitis.  We did send a

20   redline contract when we submitted the bid.

21             MR. NASH:  Oh, you did?  I didn't

22   see it.  Okay.

23             MR. YOUNG:  If you could take a

24   look at that, but I believe what it says --

25   I'll pull it up here -- is to the extent

 1    that tenants vacate or vacated within 45

 2    days after the auction, those arrears would

 3    belong to the estate; and if not, those

 4    arrears would flow to the purchaser.

 5              MR. NASH:  Now, when you say

 6    vacate, is it a -- there's no conditions on

 7    the sale in terms of the tenants.  The lease

 8    is going to be assumed.  There's no

 9    conditions that any tenant has to vacate.

10              MR. YOUNG:  We understand that.

11    That's agreed.  It's strictly with respect

12    to where the arrears go.

13              MR. NASH:  So you set up a 45-day

14    window.  And what paragraph is that?

15              MR. YOUNG:  Give me one moment.

16    That is paragraph 2.1(b), like boy.

17              MR. NASH:  Now, am I reading your

18    contract correctly, on the JLL, as a

19    pre-petition broker, you're looking for an

20    indemnity from the seller's estate?

21              MR. YOUNG:  We are not looking for

22    an indemnity.  We just have an

23    acknowledgment that we did deal with JLL,

24    who our understanding was retained by the

25    seller on a prior contract that my client

1    was in about nine months ago which was

2    terminated, so we could not fairly make a

3    rep that we had dealt with no broker in

4    connection with the property.

5                MR. NASH:  Okay.  But then the

6    last sentence says, "Each party agrees to

7    indemnify and hold the other harmless from

8    and against any liability claim, lost

9    damage."

10               MR. YOUNG:  I think it says any

11   other broker.  Sorry to jump in.

12               MR. NASH:  Okay.  So that

13   indemnity does not apply to JLL?

14               MR. YOUNG:  That's correct.

15               MR. NASH:  And what do yo mean by

16   commercially reasonable insurance?

17               MR. YOUNG:  I'm sorry, did you say

18   insurance?

19               MR. NASH:  Yeah.  The paragraph on

20   page 10, "Conditions of the Premisses," you

21   have a redline, commercially reasonable

22   insurance.  What do you mean by commercially

23   reasonable insurance?

24               MR. YOUNG:  Replacement-cost

25   coverage.  Essentially whatever would be

1    required by the loan documents, I think it

2    would be fair to say is commercially

3    reasonable.

4              MR. NASH:  And if it's less than

5    that, what does that mean?

6              MR. YOUNG:  There's certainly

7    enough to cover the threshold such that if

8    there were no insurance remaining, and we

9    had to take subject to a loss exceeding the

10   threshold and right to terminate, that, you

11   know, we wouldn't be prejudiced by that.

12             MR. NASH:  Now, you understand I

13   cannot get you, under any circumstances, a

14   mortgage tax exempt?

15             MR. YOUNG:  I think the -- I

16   believe the ask is to request that the

17   lender split and assign the existing

18   mortgage in order to preserve mortgage tax.

19             MR. NASH:  Okay, but that's not --

20   that's different than a mortgage tax exempt.

21             MR. YOUNG:  We understand.

22             MR. NASH:  I can't get it under

23   1146.

24             THE STENOGRAPHER:  I didn't hear

25   that.

1          MR. NASH:  I can't get a mortgage

2    tax exemption under 1146.

3          Last question.  Are you still

4    ready to close by Friday?

5          MR. YOUNG:  Alex, do you want to

6    respond on that?

7          MR. COLAITIS:  It is our intent to

8    close on or before Friday if possible.

9          MR. NASH:  Is that a requirement?

10          MR. COLAITIS:  It's not a

11    requirement, but it would be our intent and

12    goal.

13          MR. NASH:  What do you mean it's

14    not a requirement?

15          MR. COLAITIS:  I mean, to the --

16          MR. YOUNG:  Let me jump in.  We

17    provided and signed a contract that

18    provides, you know, and permits closing

19    within 60 days after the date of the

20    auction.  So if we cannot close by Friday,

21    Alex is still willing to proceed on those

22    terms.

23          MR. NASH:  Okay.  So I want to

24    understand -- not to put you on the spot,

25    but you also sent in an affidavit to the

1        Court as a requirement, and the Court

2        exercised itself, and the lawyers exercised

3        themselves,  because we were informed, based

4        upon an affidavit, that this was a -- I

5        didn't even call you Mr. Colaitis.  I called

6        you the 1031 buyer.  That was a condition in

7        your bid, and we wanted to get a market

8        going, and so we acquiesced to doing this on

9        short notice to meet that requirement.

10              So I just want to get a clear

11        statement.  And how I'm going to deal with

12        that, I'll discuss with the lender.  But the

13        whole premise of this auction was that you

14        needed a quick turnaround on the closing;

15        i.e., before March 29th.  And, in fact, you

16        submitted your 1031 paperwork that showed 45

17        days ending November 12th.  I used my hands

18        and toes, and I got to 180 days.  I think

19        you closed September 30th, and it came to

20        March 29th.  So now you're telling me that

21        that was all, what?  Did it matter, or it

22        didn't matter?

23              MR. COLAITIS:  No.  Jesse, you

24        should jump.  But we would like to close on

25        or before Friday because there's a

```
 1      significant tax liability to the extent I
 2      don't, but I don't want to disqualify myself
 3      from pursing the building to the extent it
 4      is impossible from the seller's perspective
 5      to close on Friday or before that date.
 6              MR. NASH:  Well, nothing is
 7      impossible.  I mean did this -- I just
 8      want to know -- assume nothing is
 9      impossible, okay?
10              MR. COLAITIS:  Well, then we would
11      like to close on or before Friday.
12              MR. YOUNG:  Yeah, and let me jump
13      in as well.  You know, there are certain
14      other things that are necessary in order to
15      close.  You'll see, based on Alex's
16      assurances, one of those items is a
17      commitment from the lender.  Setting aside
18      his lender, in order to close he needs
19      insurance.  He's been requesting things
20      necessary to put insurance in place, which
21      he hasn't received.  So, you know, he's
22      prepared to go beyond his 1031 if necessary.
23      He would like to close by Friday, but
24      certain other things have to be put in place
25      in order for that to happen.
```

1           MR. NASH:  Okay.  I'm just a

2     little confused, okay?  What lender are you

3     talking about?

4           MR. COLAITIS:  Hudson Point Group.

5     I have a commitment letter from them that we

6     submitted.

7           MR. NASH:  They're going to have

8     to -- so you're closing with financing, and

9     your lender is going to be ready to close

10    Friday morning knowing that I probably won't

11    get an order out in the Bankruptcy Court

12    until late in the day on Thursday?  Because

13    it's regular calendar for the Judge, late in

14    the day on Thursday.

15          MR. COLAITIS:  That's correct.

16          MR. NASH:  So he's ready to go on

17    Friday?

18          MR. COLAITIS:  Correct.

19          MR. YOUNG:  That's what they've

20    told us, yes.

21          MR. NASH:  All right.  So just to

22    recap, unless the tenants vacate within 45

23    days, you keep the rents; is that point 1?

24          MR. YOUNG:  Correct.

25          MR. NASH:  Okay.  Just to recap,

1      if the closing does not occur by Friday,

2      you're still ready, willing and able to

3      close within the additional time, 60 days

4      after (inaudible)?

5                  THE STENOGRAPHER:  I'm sorry, 60

6      days after what?

7                  MR. NASH:  The order becomes

8      final.

9                  MR. COLAITIS:  Yes.

10                  MR. NASH:  You're not looking for

11     indemnity on any brokerage from the seller's

12     estate; is that correct?

13                  MR. COLAITIS:  Yes.

14                  MR. NASH:  And if we do close by

15     March 29th or the 28th, without plan, who

16     pays the transfer tax?

17                  MR. COLAITIS:  I would fund the

18     transfer tax.

19                  MR. NASH:  You will fund the

20     transfer tax, okay.

21                  MR. COLAITIS:  I believe that

22     language is included in the PSA as well.

23                  MR. YOUNG:  Yes, it is.

24                  MR. NASH:  I just wanted to

25     confirm.  All right.  One question for

1        Mr. Solomon's client.

2                    MR. SOLOMON:  Yes.

3                    MR. NASH:  You had (inaudible).

4                    THE STENOGRAPHER:  I'm sorry, I

5        can't hear you.

6                    MR. NASH:  Yes.  You had in your

7        representation clause -- Kevin Nash -- in

8        paragraph 19, that you wanted the seller to

9        make the following representations as to

10       existing tenants, that "All the leases are

11       in full force and effect, and the seller has

12       not sent a rent notice to any tenant

13       claiming such tenant is in default which

14       default remains uncured."

15                    I believe some or all of the

16       leases are in at least a monetary default;

17       i.e., the tenant owes arrears.  We posted on

18       the internet a rent roll, which was an

19       active rent roll that we received from the

20       managers showing about $300,000 in past due

21       rent, and I just want you to understand, as

22       I understand it from the manager, rent

23       demands have been issued, rent bills have

24       been issued, and I don't know for sure, but

25       it's possible that landlord/tenant

1    proceeding may have been started against

2    more or one tenants.

3            So my question to you is as

4    follows:  The seller cannot make that

5    representation.  Are you insisting on it?

6            THE STENOGRAPHER:  I cannot hear.

7            MR. NASH:  They're talking,

8    Brandy.  They're talking.

9            (Off-the-record discussion between

10   Mr. Solomon and Mr. Spatz.)

11           MR. SOLOMON:  Kevin, we can omit

12   the need for representation, but we would

13   want copies of whatever notices.

14           THE STENOGRAPHER:  And I'm sorry,

15   who was speaking again?

16           MR. SOLOMON:  Jay Solomon.

17           MR. NASH:  So Jay Solomon said

18   words to the effect "We're taking out the

19   representation," but they asked them -- I

20   think they're entitled to copies of any

21   notices, rent demands, outstanding bills,

22   past dues, what have you that was sent to

23   tenants.

24           MR. SOLOMON:  Correct.

25           MR. NASH:  Okay.  All right.  So I

1    clarified my questions on the contract, on

2    the various contracts.  I'm going to --

3                MR. DWECK:  Can I make a

4    statement?

5                MR. NASH:  Yes.

6                MR. DWECK:  This is Eli Dweck.

7    Considering what we heard from Mr. Colaitis

8    and Mr. Young, it appears that since they're

9    willing to close later than March 29th, that

10   perhaps it would be better if we adjourn the

11   auction to a time where we can receive a

12   higher --

13               MR. NASH:  I don't believe I'm

14   authorized to do that.  I'm operating under

15   an order.  Now, when we go into court

16   tomorrow, it's for the confirmation of the

17   sale, and I think it's going to be news to

18   the Judge.  I don't know if it's moot or

19   not, because the client's proposal is less

20   than the other bids, and it does have that

21   contingency of 45 days unless they keep the

22   rent, so I think it might be moot, but no,

23   I'm not in a position to adjourn the

24   auction.

25               MR. COLAITIS:  Can I interject?

1      This is Alexander Colaitis.  I just want to

2      make sure that what I was trying to convey

3      wasn't misrepresented.  We have every

4      intent, and we want to close on or before

5      Friday, but to the extent that's not

6      possible for whatever reason, we don't want

7      to disqualify ourselves from pursuit of the

8      deal, so I don't think it's a fair

9      assessment of what we were trying to convey

10     to say that we would be willing to elongate

11     this process.  That is not what we would

12     want to do.  It's just to the extent

13     external circumstances require it, we want

14     to continue pursuing the deal, if that makes

15     sense.

16              MR. NASH:  It does.  Okay.  Now,

17     has --

18              MR. VINCEQUERRA:  Jim Vincequerra,

19     counsel for Ladder.  You had no clarifying

20     questions or comments?

21              MR. NASH:  No.  I don't think they

22     made any changes.  I know there's an issue

23     over the deposit, which we'll deal with

24     post-closing.

25              MR. SOLOMON:  I would have some

1      questions about that too.

2                 MR. NASH:  Okay.  What's your

3      question?

4                 MR. SOLOMON:  I think it's highly

5      unusual that if the contract of the sale

6      extends prior to the bankruptcy that it

7      wasn't closed.  I have questions whether or

8      not it's the same entity that's in contract

9      with me.  I have questions as to why that

10     contract didn't close, and (inaudible).

11                THE STENOGRAPHER:  I didn't hear

12     after close.

13                MR. SOLOMON:  And whether or not

14     the debtor has grounds to hold that

15     prospective purchaser in default, might that

16     deposit be a credit from the bankruptcy

17     estate?

18                MR. NASH:  Okay.  So let me answer

19     your question.

20                MR. VINCEQUERRA:  Let me just jump

21     in, Kevin.  It's James Vincequerra from

22     Alston & Bird for Ladder.  And as I

23     previously explained to counsel for the

24     debtor and counsel for Mr. Gindi, it is the

25     lender's position that consistent terms of

1        the purchases (inaudible).

2                THE STENOGRAPHER:  I'm sorry, it's

3        cutting out.  I can't hear you.

4                MR. VINCEQUERRA:  I'm sorry.  It

5        is the lender's position that consistent

6        with the express terms of that pre-petition

7        contract which never closed, that the

8        deposit, the $1 million deposit, was

9        forfeited, and the purchaser, Mr. Gindi or

10       his entity, forfeit any right to return of

11       those funds by the express language, and so

12       we question Mr. Gindi or his entity's

13       ability to get any credit afterwards.

14               MR. SOLOMON:  This is Jay Solomon

15       for Mr. Spatz, and I join in that objection

16       and question whether or not 385 G, LLC

17       should be considered a qualified bidder.

18               MR. NASH:  All right.  So I'm

19       going to respond.  Mr. Gindi has his own

20       counsel, but I'm going to respond from the

21       estate perspective, okay?

22               As a bidder, you have no standing

23       other than to make a bid, okay?  That's

24       number one.  Number two -- but I'm going

25       to -- I'm trying to run an open process.  So

1       the issue of the deposit is somewhat

2       atypical because there is an existing

3       executory contract that's never been

4       terminated and is still in play.

5                Now, for the purposes of

6       proceeding today, that existing contract was

7       declared in the petition as a potential

8       stalking horse.  So Mr. Gindi did not take

9       the position that you have to go forward

10      only with his contract.  He took the

11      position that it was going to be an open

12      process.  That's what we hear in number one.

13               Number two, whether or not he gets

14      credit for the $1 million or not is not a

15      today issue.  My job today is to yield the

16      highest offer and the next highest offer on

17      gross dollars.  And then once I know what

18      the gross dollars are, I will then get

19      consultation with the lender, make a

20      determination what's highest and best.

21               So at this point, I'm looking for

22      gross dollars from all the bidders, and then

23      I will make a determination what is the

24      best, what adjustments so far need to be

25      made to those gross dollars.  So I want the

1      process to be here in this -- today, as an

2      auction, to get the highest and best, to get

3      a backup bidder, and then whatever issues

4      there exist between Gindi and the lender

5      will be dealt with between Gindi's lawyers

6      and the lender, but it's not going to

7      persuade me from pursuing the highest

8      investment because it's an open issue.  I

9      realize that.  But I'm going to proceed to

10     get the highest and best.  I'm not

11     adjourning this.  That is resolved.  I'm not

12     doing that.  I run with a tight time train.

13     I was happy you got involved.  I tried to,

14     you know, follow the lead of the report in

15     terms of getting notices out, getting

16     publications in the New York Times out and

17     so forth.

18             So we're here.  I received three

19     contract deposits independent of $1 million

20     as a cash component to the Gindi deposit as

21     well, so I'm going to proceed along those

22     lines.

23             MR. SOLOMON:  This is Jay Solomon.

24     So just for clarification, Mr. Spatz had

25     indicated that he made a deposit of

```
 1        $1,800,000, so just for clarification, the

 2        $1 million is on the prior contract, and the

 3        800 is new money?

 4                  MR. NASH:  Just for clarification,

 5        I'm going to give you -- it's a little bit

 6        more than $1 million, so I'm going to give

 7        you -- just for clarification, these are the

 8        deposits that I received into my file

 9        yesterday, okay?  I received $835,000 from

10        Spatz.  I received 765 from Colaitis, and an

11        additional 703 cash from Gindi.  So I'm

12        holding those three deposits.  I've

13        confirmed they hit the account, and that's

14        what I'm holding, okay?  Everyone in my mind

15        is eligible to bid today.

16                  MR. VINCEQUERRA:  This is James

17        Vincequerra From Alston & Bird for Ladder.

18        So just for clarification, the Gindi --

19        we're going to refer to it as the Gindi bid

20        deposit.  The Gindi deposit is $1 million

21        under the old contract.

22                  MR. NASH:  No, it's a little bit

23        more.

24                  MR. DWECK:  That is $1,075,000.

25                  MR. VINCEQUERRA:  $1,075,000, and
```

1          then --

2                    MR. NASH:  703.

3                    MR. VINCEQUERRA:  703.  Okay.

4          $1,075,00 and 703 is --

5                    MR. DWECK:  I believe there was

6          some -- there was some, but it was -- there

7          was more funds deposited under the contract,

8          which I thought was really --

9                    MR. NASH:  Yeah, not all --

10                   MR. VINCEQUERRA:  Just, Kevin, by

11         representation -- you're going to make a

12         representation --

13                   MR. NASH:  At or about $1,008,000,

14         okay?  Because not all of the deposit was

15         released, okay?

16                   All right.  So can we go to the

17         second aspect of this?  Bidding procedures.

18         I'm going to ask each of the bidders --

19                   MR. SOLOMON:  Just before we leave

20         this issue regarding 385 G and Gindi, I

21         mean, you know, I note that based upon what

22         we you just disclosed, he did not make a 10

23         percent deposit in (inaudible).

24                   THE STENOGRAPHER:  I can't hear

25         that well.  I'm sorry, he did not what?

 1             MR. SOLOMON:  He did not make a

 2     10 percent deposit in cash before the bid,

 3     and he's proposing to give proceeds to close

 4     which are less than the bid amount because

 5     he's assuming he still has money into play.

 6             MR. NASH:  Again, Mr. Solomon,

 7     that's an issue between the lender and

 8     Gindi, because the money was released to the

 9     lender.  It's not like it didn't exist.  It

10     existed.  It was released from the deposit.

11     The disposition of that is a further

12     proceeding.  It's not going to deter or

13     change the fact that I am asking for higher

14     and better offers, and I'm going to proceed

15     along those lines.

16             MR. SOLOMON:  I understand that,

17     but, you know, it's a binding objection.

18             MR. NASH:  You have no standing,

19     but you can file an objection if you want,

20     okay?

21             MR. SOLOMON:  Yes.

22             MR. NASH:  All right.  Has each of

23     the bidders reviewed and are knowledgeable

24     with the bid procedures?

25             I'm going to start with Colaitis.

1              MR. COLAITIS:  I have.

2              MR. NASH:  Okay.  Are you prepared

3      to bid in accordance with the bid

4      procedures?

5              MR. COLAITIS:  I am.

6              MR. NASH:  Are you prepared, if

7      you're not the highest bidder, to be the

8      backup bidder or the next highest bidder?

9              MR. COLAITIS:  I am.

10              MR. NASH:  Are you prepared to

11      maintain your deposit until there's a

12      closing?

13              MR. COLAITIS:  I am.

14              MR. NASH:  Mr. Spatz, same

15      question.  Are you familiar with the bid

16      procedures?

17              MR. SPATZ:  Can you repeat the

18      question?

19              MR. NASH:  Are you familiar with

20      the bid procedures?

21              MR. SPATZ:  I am.

22              MR. NASH:  Are you prepared to bid

23      in accordance with the bid procedures?

24              MR. SPATZ:  Yes.

25              MR. NASH:  Are you prepared to be

1       a backup bidder and maintain your deposit

2       with the next highest bidder through the

3       date of a closing?

4                  MR. SOLOMON:  I think that one we

5       would take under advisement depending how

6       high the bidding point.

7                  (Off-the-record discussion between

8       Mr. Solomon and Mr. Spatz.)

9                  MR. SOLOMON:  So, Kevin, our

10      question to you is, answering that question

11      -- is asking that question necessary in

12      order to bid?

13                 MR. NASH:  Okay.  I'm just going

14      to tell you what the bid procedures say,

15      okay?  And these are approved by the Court.

16      It says, "As soon as practical following

17      conclusion of each auction, the Greenwich

18      debtor shall file a notice on the Bankruptcy

19      Court docket identifying the (inaudible)."

20                 THE STENOGRAPHER:  I'm sorry, I

21      didn't hear the end of that.

22                 MR. NASH:  "Identifying the

23      successful bidder to the Greenwich property.

24      Notwithstanding the selection of the

25      successful bidder, all bids are binding and

1    underscored and irrevocable" -- I said it

2    nicely -- "until the later of 90 -- the

3    closing date or 90 days after the sale here"

4    -- so that was inserted to keep the next

5    highest bidder in play.

6              MR. VINCEQUERRA:  Can I make a

7    comment, Kevin?

8              MR. NASH:  Sure.

9              MR. VINCEQUERRA:  James

10   Vincequerra from Alston for Ladder.  I think

11   the problem we're confronting here is that,

12   you know, it's very difficult for any bidder

13   to compete against a number that is not

14   here.  We know that there's this issue

15   around $1,075,000.  The offer is getting 100

16   percent credit?  Is it getting zero percent

17   credit or something --

18             MR. NASH:  I don't think it's

19   difficult because I think his attorneys will

20   confirm.  I think Mr. Gindi will make his

21   bid.  If he gets credit for it -- and I'll

22   let them speak.  They think they're entitled

23   to credit.  If they don't get credit for it,

24   they might not be the highest bid.  They

25   might be the next highest bid.  It depends

 1    on what the bids go and where they go to.

 2              MR. VINCEQUERRA:  Right, but

 3    that's --

 4              MR. NASH:  But that's independent.

 5    Let me finish because this Judge I think

 6    inserted this, okay?  "Keeping the bids

 7    alive through the date of closing or 90 days

 8    from tomorrow."  So that is part of the bid

 9    procedures, and I do believe, if I'm not

10    mistaken, we did have some colloquy with the

11    Court on that, and I think that was done

12    either at the selection -- or the direction

13    of the Court or on the Court's zoning issue.

14              MR. VINCEQUERRA:  James

15    Vincequerra for Ladder.  This is not a new

16    issue.  The operative contract relating to

17    the deposit is between the debtor and the

18    Gindi purchaser.  It clearly relates to the

19    forbearance agreement with a lender, but the

20    operative agreement and the forfeiture

21    language in question is in the PSA between

22    the Gindi purchaser and lender.  So the

23    lender's position here is that the debtor

24    has got to take a position (inaudible).

25              THE STENOGRAPHER:  I'm sorry, I

1    didn't hear after position.

2              MR. VINCEQUERRA:  The lender's

3    position is that the debtor must take a

4    position on the value of that $1,075,000 and

5    change deposit will be credited in these

6    proceeding or in forbearance to the payment.

7    They promised to make --

8              MR. NASH:  Okay.  I don't think I

9    need to take that position today.  We

10   discussed it, and I don't think it's any

11   issue.  I'm going to -- I'm going to start

12   the bidding.  Once I see the highest bid and

13   the next highest bid, then I will speak with

14   the Gindi lawyers, and they will announce

15   the position of the Gindi as defined.  I

16   don't think I need to take that position

17   before we start the bidding.  I think it's

18   fair that we might, without closing the

19   bidding, give you that position, but right

20   now I'm soliciting two things:  One, the

21   highest bid; two, confirmation that these

22   bids are open in accordance with the bid

23   procedures.

24             MR. SOLOMON:  This is Jay Solomon

25   for Mr. Spatz, you appreciate the problem is

1        that if 385 started bidding up --

2                MR. NASH:  Right.

3                MR. SOLOMON:  -- under the

4        impression that they have funds to close,

5        they may carry with them other bidders who

6        are then bidding higher than they normally

7        would chasing somebody who is under a false

8        pretence and won't be able to close.

9                MR. NASH:  Again, that is a

10       decision you will make.  That's why we keep

11       the next highest bid in place, and we'll

12       make that decision, because there's going to

13       be a dispute that might even have to be

14       litigated, so -- and I'm not going to make

15       that determination before we start bidding.

16       If I see where the bidding goes, it might

17       become all academic.  But yes, in any

18       bankruptcy auction, there is a possibility

19       that people do not close, or their

20       assumptions regarding disposition of certain

21       aspects of their bid proved wrong.  They

22       still -- if they make a bid when they -- and

23       they understand that risk, if they don't

24       close, there's consequences, and it will be

25       jumped to the next highest bid.  That's why

1          I think it's important I gave a confirmation

2          to your client that your bid includes the

3          bid procedures.

4                    MR. VINCEQUERRA:  Jim Vincequerra

5          from Alston & Bird for Ladder.  We can solve

6          this problem if we could get a statement

7          from the record from the Gindis that they

8          will stand behind the $1,750,000 if they

9          lose on the issue.  Will they do that?

10                   MR. NASH:  I will speak to them.

11         They have their own attorneys.

12                   MR. VINCEQUERRA:  They're here.

13                   MR. NASH:  Well, they're going to

14         talk about it, and then they'll tell us,

15         okay?

16                   (Off-the-record discussion between

17         Mr. Solomon and Mr. Spatz.)

18                   MR. SOLOMON:  Can I get a

19         clarification?  This is Jay Solomon.

20         Regardless of who ends up to be the highest

21         bidder, will the debtor in conjunction with

22         the lender make a determination who is the

23         highest and best so that the highest number

24         may not necessarily be (inaudible)?

25                   THE STENOGRAPHER:  May not

1    necessarily what?  I apologize.

2               MR. VINCEQUERRA:  Declared the

3    highest and best offer.

4               MR. NASH:  Fair enough.  We will

5    make a recommendation, and the Judge will

6    make a determination as to the highest and

7    best after a hearing.  So we will make a

8    recommendation, but as you are aware, the

9    final say belongs to the Judge.

10              MR. VINCEQUERRA:  James

11   Vincequerra from Alston & Bird for Ladder.

12   I can say that we'll make that

13   recommendation after consulting.

14              MR. NASH:  Right.  There's a

15   consultation part.  So I'm going to take a

16   two-minute recess, five-minute recess.  I'm

17   going to ask the Gindi people to speak to

18   Moshe Sasson, and then I'll come in and make

19   the finding, okay?

20              (Off the record from 4:02 p.m.

21   until 4:16 p.m.)

22              MR. NASH:  Okay.  We're back on

23   the record.  Okay.  A question was posed to

24   the Gindi Group from Ladder, and what is

25   your response?

1          MR. DWECK:  In the event the Court

2     determines the $1 million is retained by

3     Ladder, and we don't get the application of

4     it to our purchase price, we will --

5          THE STENOGRAPHER:  I didn't hear

6     after purchase price.  I'm sorry.

7          MR. NASH:  He says -- the question

8     was regardless of whether the $1 million is

9     a credit against the deposit, are you still

10     going to close on your bid?  And the answer

11     is?

12          MR. DWECK:  Yes.

13          MR. NASH:  Yes.  Okay, Ladder you

14     heard that?

15          MR. VINCEQUERRA:  Heard it.

16          MR. NASH:  Solomon, you heard

17     that?

18          MR. SOLOMON:  I heard that, but I

19     make the statement that there's no financial

20     evidence that they can --

21          MR. NASH:  Okay.  That's not for

22     you to make.  You're here to bid, okay?  You

23     have no standing.  I am trying to run a

24     transparent process.  There's legions of

25     case law that a destructive bidder has no

1          standing.  So we're here to get the highest

2          and best.  You asked for that clarification.

3          Fortress -- not Fortress, but Ladder --

4          you're not Fortress, right?

5                    MR. VINCEQUERRA:  No.

6                    MR. NASH:  You're from the same

7          belt though, right?

8                    MR. VINCEQUERRA:  Not really.

9                    MR. NASH:  They asked for that

10         clarification; they got it.  Now, before we

11         start the bidding, we got to show what we

12         call a good-faith purchase of stats.  So I'm

13         going to ask each of the purchasers two

14         questions:  One, have you had any

15         discussions with anybody with the debtor

16         about the amount or disposition of your bid?

17                   Mr. Spatz?

18                   MR. SPATZ:  No.

19                   MR. NASH:  Have you had any

20         discussions with Ladder concerning your bid,

21         either the amount of your bid or the

22         financing associated with the bid?

23                   MR. SPATZ:  (No audible response.)

24                   THE STENOGRAPHER:  What was the

25         answer?

 1              MR. SOLOMON:  No to each question.

 2              MR. NASH:  Mr. Colaitis, same

 3      question.  Have you had any discussion with

 4      the debtor regarding the debtor being Zach

 5      Gindi or his brother, Raymond -- is it --

 6              MR. VINCEQUERRA:  Randal.

 7              MR. NASH:  -- Randal Gindi

 8      regarding the bid?

 9              MR. COLAITIS:  No.

10              MR. NASH:  Have you had any

11      discussion with Ladder regarding the bid?

12              MR. COLAITIS:  No.

13              MR. NASH:  Okay.  Mr. Gindi, have

14      you had any discussions with either Spatz or

15      Colaitis regarding the bid?

16              MR. GINDI:  No.

17              MR. NASH:  Have you had any

18      discussions with Ladder regarding your bid?

19              MR. GINDI:  No.

20              MR. NASH:  Well, with that, I

21      think there's a record of good faith.  I

22      think there's been, over the last hour or

23      close thereto, clarifications of the bidding

24      and the bids, and with that --

25              MR. DWECK:  I think you need to

1    clarify the increments.

2              MR. NASH:  I will.  Good point.

3    I'm going to do the increments at $25,000.

4    I have discretion.  I'm going to start at

5    25.  People that know me know I'm very

6    impatient, so once I start at 25, if I see

7    us moving too slowly, I might move it up,

8    okay?  But I will do it consultation with

9    everybody.  Are we all good on 25, guys?

10   Yes?

11             MR. DWECK:  Yes.

12             MR. NASH:  Mr. Colaitis, good?

13             MR. COLAITIS:  Good.

14             MR. NASH:  Okay.  With that, I did

15   receive three bids.  I received a bid from

16   Mr. Spatz -- and I want to make sure I got

17   the right amount, $8,350,000.  I received a

18   bid from Gindi, $8,250,000  I received a bid

19   from Mr. Colaitis of $7,650,000.

20             Do I have those numbers right?

21             Mr. Colaitis, you have $7,650,000?

22             MR. COLAITIS:  Correct.

23             MR. NASH:  Mr. Gindi, you're

24   $8,250,000?

25             MR. GINDI:  Yes.

 1                    MR. NASH:  Mr. Spatz, you're

 2        $8,350,000?

 3                    MR. SPATZ:  Correct.

 4                    MR. NASH:  Okay.  So this is going

 5        to be round one of bidding.  The next bid I

 6        am seeking -- let's write it down, guys.

 7        $8,375,00  Do I have that right?  You got to

 8        speak up.

 9                    MR. SPATZ:  Yes.

10                    MR. COLAITIS:  Yes.

11                    MR. NASH:  Okay.  I'm requesting a

12        bid of $8,375,000.  You don't have to bid

13        against yourself right now.

14                    Do I have a bid of $8,375,000?

15                    MR. COLAITIS:  Are you directly

16        asking me?

17                    MR. NASH:  Yes.

18                    MR. COLAITIS:  No, no.

19                    MR. NASH:  You're not bidding

20        $8,375,000?

21                    MR. COLAITIS:  No.

22                    MR. NASH:  Okay.  So you're out of

23        the bidding; is that correct?

24                    MR. COLAITIS:  I'm not bidding

25        $8,375,000 so I guess that means --

1           MR. NASH:  I'd like a direct

2      answer to a direct question.

3           MR. COLAITIS:  Correct.

4           MR. NASH:  Are you out of the

5      bidding?

6           CLERK:  I'm out of the bidding at

7      $8,375,000, correct.

8           MR. NASH:  Okay.  All right.

9      Thank you for your time today.  I think

10     we --

11          MR. VINCEQUERRA:  Ask him if he

12     understood that he's precluded from bidding

13     again, because I don't think that's what the

14     procedures say.

15          MR. NASH:  Okay.  Mr. Colaitis, if

16     you don't bid, you're no longer eligible to

17     bid again.

18          MR. VINCEQUERRA:  I don't think

19     that's what the procedures say.  Jim

20     Vincequerra.

21          MR. NASH:  What do you think

22     instead?

23          MR. VINCEQUERRA:  I think that

24     he's entitled to stay until the conclusion

25     of the auction.

1          MR. NASH:  All right.  You can

2     stay until conclusion, but he can't bid.

3          MR. VINCEQUERRA:  Of course he

4     can.  It doesn't say anywhere the procedures

5     that he's precluded from bidding even if he

6     misses a round.

7          MR. NASH:  Okay, fair enough.

8          MR. COLAITIS:  Just to be clear,

9     Kevin, to the extent that neither of the

10    buyers above me can perform, my bid at my

11    prior price is still applicable, correct?

12         MR. NASH:  No.

13         MR. COLAITIS:  So my $7.65 million

14    bid is now null and void even if neither

15    buyer above me --

16         MR. NASH:  No, it's not null and

17    void.  There's two bids head of you right

18    now.

19         MR. COLAITIS:  Right.

20         MR. NASH:  There's $8,250,000.

21    You're not even the backup bidder right now.

22         MR. COLAITIS:  Understood, but if

23    neither of them can perform, the deal

24    defaults to me?

25         MR. NASH:  I would re-notice the

1          auction.  I would take all the deposits,

2          re-notice the auction, and you would get

3          notice.  Don't you worry, okay?  But you can

4          watch, and you can -- if you have a change

5          of heart and you want to surprise me and

6          jump in at $25 million, feel free.  Okay.

7                    Mr. Gindi, do I have a bid from

8          you with $8,375,000?

9                    MR. GINDI:  Yes.

10                   MR. NASH:  Okay.  So -- and that's

11         on the terms of your contract, correct?

12                   MR. GINDI:  Yes.

13                   MR. NASH:  And that's on the terms

14         that you've announced and the terms of the

15         treatment of the down-payment, correct?

16                   MR. GINDI:  Absolutely.

17                   MR. NASH:  So we don't have to say

18         that all day.  Every time we bid, that's

19         what we mean.  All right.

20                   Mr. Spatz, I'm going to end round

21         one.  Round one is over.  We're going to do

22         round two.  Round two is the same

23         increments.  I'm not changing that $25,000.

24         The next highest bid is.

25                   MR. VINCEQUERRA:  8.4.

1          MR. NASH:  Thank you, Jim.

2          THE STENOGRAPHER:  What was it?

3          MR. NASH:  $8.4 million.

4          Mr. Spatz, do I have a bid of

5    $8,400,000?

6          MR. SPATZ:  Can I get clarity on

7    something?

8          MR. NASH:  Sure can.

9          MR. SPATZ:  Because I wasn't sure

10   still about that whole if I want to stay in

11   and be the backup basically.

12          MR. NASH:  I think that's a part

13   of this.  Right now you are the backup

14   bidder.

15          MR. SOLOMON:  Right.

16          MR. NASH:  Because you were one

17   bid behind --

18          MR. SOLOMON:  Right.

19          MR. NASH:  -- $8,375,000.

20          MR. SOLOMON:  Correct.

21          MR. NASH:  So I think you're in.

22          MR. SPATZ:  Can I ask another

23   question?

24          MR. NASH:  Surely.

25          MR. SPATZ:  I'm just curious about

1       novice and the bid/auction stuff, just

2       curious.

3                   MR. NASH:  Sure.

4                   MR. SPATZ:  With all due respect,

5       Gindi pays the owner of the property.  Isn't

6       he the owner of the property?

7                   MR. NASH:  No, with all due

8       respect, I'm yielding these questions as --

9                   MR. SPATZ:  But I'm just saying --

10      with all due respect, I'm saying I'm the one

11      that's bidding.

12                  MR. NASH:  Yes.  Again, you have

13      counsel.  You see these guys here, Ladder?

14      They're getting the money, okay?  So they're

15      getting the money.  They also have creditor

16      rights.  I can go to Jim Vincequerra, and I

17      can say, "By the way, do you want a credit

18      bid?"  And he can say yes.  I don't think he

19      will, but he can.

20                  So I'm asking you -- and you're

21      entitled to ask questions, and I want to run

22      a fair process, but we're now passed the

23      question phase.  We're into the bidding

24      phase.  So whether you -- whether your bid

25      now, if you want to continue, is $8,400,000.

1          Do I have $8,400,000?

2                    MR. SPATZ:  Yes.

3                    MR. NASH:  And, Mr. Gindi, do I

4          have a bid of $8,425,000?

5                    MR. GINDI:  Yes.

6                    MR. NASH:  Mr. Colaitis, do you

7          want to jump in, or are you done?

8                    MR. COLAITIS:  No.  I appreciate

9          it, but I'm done.

10                    MR. NASH:  Okay.  Okay.  All

11          right.  That concludes round 2.

12                    MR. VINCEQUERRA:  Three.

13                    MR. NASH:  No.

14                    MR. VINCEQUERRA:  Oh, round 2.

15          You're right.

16                    MR. NASH:  Okay.  I'm going to

17          round 3.  All right.  I'm not done with my

18          spiel.  How about a Munchkin?  It will give

19          you energy, and you'll get vitality, and

20          you'll go crazy.

21                    All right.  I'm starting round 3.

22          Round 3, Mr. Spatz, I'm looking for an offer

23          of $8,450,000.

24                    MR. VINCEQUERRA:  (Inaudible.)

25                    THE STENOGRAPHER:  What was that,

1         the answer?

2                    MR. NASH:  I'm looking for a bid

3         -- don't listen to Jim.  I'm looking for a

4         bid of $8,450,000.  I see you're having a

5         Munchkin.  I'll give you chocolate.  Let's

6         have that bid of $8,450,000.

7                    MR. SPATZ:  No, I don't want to

8         play this game.  So this to me is a game

9         with no ending.  I am a person that is

10        deemed qualified to close as the buyer and

11        the seller.  So whatever the legality of it

12        is, I get it, blah, blah, blah.  I don't see

13        any closure.  I'm not down with this.  You

14        got my best number.

15                   MR. NASH:  Okay.

16                   MR. SPATZ:  You guys know I'm

17        capable of closing.  Because of all the

18        things taken into consideration --

19                   MR. NASH:  Okay.  But what I would

20        like to get from you is $8,450,000  Do I

21        have that bid?

22                   MR. SPATZ:  No.

23                   MR. NASH:  Okay.  I don't have

24        that bid.  All right.  So --

25                   MR. VINCEQUERRA:  I think we

1       should take a break.

2                    MR. NASH:  Yes, we should take a

3       break.

4                    (Off the record from 4:29 p.m.

5       until 5:00 p.m.)

6                    MR. NASH:  All right.  We're back

7       on the record.  I closed the bid at

8       $8,425,000 at the consultation with the

9       lender to obtain the lender's support as to

10      a higher and better offer.  Mr. Gindi

11      voluntarily increased his offer to

12      $8,475,000 and he's going to -- according to

13      the bid procedure, he's going to chew up the

14      full 10 percent by Friday.  I am deeming

15      Mr. Spatz the backup bidder at $8,400,000,

16      and so I'm going to file results consistent

17      with that.

18                   Mr. Colaitis, thank you for your

19      time.

20                   MR. COLAITIS:  Yeah, I appreciate

21      it.

22                   MR. NASH:  Okay.  Good luck to

23      you.

24                   MR. COLAITIS:  You as well.

25                   MR. NASH:  And I'm going to close

1      the auction, and we're going to file it on

2      the docket.  Okay.  Thank you guys.

3                  (Proceedings were concluded at

4      5:01 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

STATE OF NEW YORK

3

COUNTY OF NEW YORK

4

5              I, BRANDY DUXBURY, do hereby

6         certify that I was authorized to and did

7         stenographically report the foregoing remote

8         auction; that a review of the transcript was

9         not requested; and that the transcript is a

10        true record of my stenographic notes.

11             I FURTHER CERTIFY that I am not a

12        relative, employee, attorney, or counsel of

13        any of the parties, nor am I a relative or

14        employee of any of the parties' attorney or

15        counsel connected with the action, nor am I

16        financially interested in the action.

17        Dated this 27th day of March, 2025.

18

19  _____

Brandy Duxbury, Stenographer

20

21

22

23

24

25

**$**

**$1**
  20:8 21:14
  22:19 23:2,
  6,20 34:2,8
**$1,008,000**
  24:13
**$1,075,00**
  24:4
**$1,075,000**
  23:24,25
  28:15 30:4
**$1,750,000**
  32:8
**$1,800,000**
  23:1
**$25**
  41:6
**$25,000**
  37:3 41:23
**$300,000**
  15:20
**$7,650,000**
  37:19,21
**$7.65**
  40:13
**$8,250,000**
  37:18,24
  40:20
**$8,350,000**
  37:17 38:2
**$8,375,00**
  38:7
**$8,375,000**
  38:12,14,20,
  25 39:7 41:8
  42:19
**$8,400,000**
  42:5 43:25
  44:1 46:15
**$8,425,000**
  44:4 46:8
**$8,450,000**
  44:23 45:4,
  6,20

**$8,475,000**
  46:12
**$8.4**
  42:3
**$835,000**
  23:9

**1**

**1**
  13:23
**10**
  8:20 24:22
  25:2 46:14
**100**
  28:15
**1031**
  5:3 11:6,16
  12:22
**1146**
  9:23 10:2
**12th**
  11:17
**180**
  11:18
**19**
  15:8

**2**

**2**
  44:11,14
**2.1(b)**
  7:16
**25**
  37:5,6,9
**28th**
  14:15
**29th**
  11:15,20
  14:15 17:9

**3**

**3**
  44:17,21,22

**30th**
  11:19
**385**
  20:16 24:20
  31:1

**4**

**45**
  7:1 11:16
  13:22 17:21
**45-day**
  7:13
**4:02**
  33:20
**4:16**
  33:21
**4:29**
  46:4

**5**

**5:00**
  46:5
**5:01**
  47:4

**6**

**60**
  10:19 14:3,5

**7**

**703**
  23:11 24:2,
  3,4
**765**
  23:10

**8**

**8.4**
  41:25
**800**
  23:3

**9**

**90**
  28:2,3 29:7

**A**

**ability**
  20:13
**able**
  14:2 31:8
**above**
  40:10,15
**Absolutely**
  41:16
**academic**
  31:17
**accordance**
  26:3,23
  30:22
**account**
  23:13
**accounts**
  6:1
**acknowledgmen
t**
  6:10,11 7:23
**acquiesced**
  11:8
**active**
  15:19
**additional**
  14:3 23:11
**adjourn**
  17:10,23
**adjourning**
  22:11
**adjustments**
  21:24
**advisement**
  27:5
**affidavit**
  10:25 11:4
**afterwards**
  20:13

**ago**
8:1
**agreed**
7:11
**agreement**
29:19,20
**agrees**
8:6
**Alex**
6:19 10:5,21
**Alex's**
12:15
**Alexander**
18:1
**alive**
29:7
**Alston**
19:22 23:17
28:10 32:5
33:11
**amount**
25:4 35:16,
21 37:17
**announce**
30:14
**announced**
41:14
**answer**
5:21 19:18
34:10 35:25
39:2 45:1
**answering**
27:10
**anybody**
35:15
**apologize**
33:1
**appears**
17:8
**applicable**
40:11
**application**
34:3
**apply**
8:13
**appreciate**
30:25 44:8

**46:20**
**approved**
27:15
**around**
28:15
**arrears**
7:2,4,12
15:17
**asked**
16:19 35:2,9
**asking**
25:13 27:11
38:16 43:20
**aspect**
24:17
**aspects**
31:21
**assessment**
18:9
**assign**
9:17
**assignment**
6:8
**associated**
35:22
**assume**
12:8
**assumed**
7:8
**assuming**
25:5
**assumption**
6:7
**assumptions**
31:20
**assurances**
12:16
**attention**
5:25
**attorney**
5:2
**attorneys**
28:19 32:11
**atypical**
21:2

**auction**
7:2 10:20
11:13 17:11,
24 22:2
27:17 31:18
39:25 41:1,2
47:1
**audible**
35:23
**authorized**
17:14
**aware**
33:8

———————

**B**

**back**
33:22 46:6
**backup**
22:3 26:8
27:1 40:21
42:11,13
46:15
**bankruptcy**
6:5 13:11
19:6,16
27:18 31:18
**based**
11:3 12:15
24:21
**basically**
42:11
**behind**
32:8 42:17
**believe**
6:24 9:16
14:21 15:15
17:13 24:5
29:9
**belong**
7:3
**belongs**
33:9
**belt**
35:7
**best**
21:20,24

**22:2,10**
32:23 33:3,7
35:2 45:14
**better**
17:10 25:14
46:10
**bid**
5:11 6:15,20
11:7 20:23
23:15,19
25:2,4,24
26:3,15,20,
22,23 27:12,
14 28:21,24,
25 29:8
30:12,13,21,
22 31:11,21,
22,25 32:2,3
34:10,22
35:16,20,21,
22 36:8,11,
15,18 37:15,
18 38:5,12,
14 39:16,17
40:2,10,14
41:7,18,24
42:4,17
43:18,24
44:4 45:2,4,
6,21,24
46:7,13
**bid/auction**
43:1
**bidder**
5:3 20:17,22
22:3 26:7,8
27:1,2,23,25
28:5,12
32:21 34:25
40:21 42:14
46:15
**bidders**
21:22 24:18
25:23 31:5
**bidding**
5:19 24:17
27:6 30:12,
17,19 31:1,

6,15,16
35:11 36:23
38:5,19,23,
24 39:5,6,12
40:5 43:11,
23
**bids**
17:20 27:25
29:1,6 30:22
36:24 37:15
40:17
**bills**
15:23 16:21
**binding**
25:17 27:25
**Bird**
19:22 23:17
32:5 33:11
**bit**
23:5,22
**black**
6:13
**blah**
45:12
**boy**
7:16
**Brandy**
16:8
**break**
46:1,3
**broker**
7:19 8:3,11
**brokerage**
14:11
**brother**
36:5
**building**
12:3
**buyer**
11:6 40:15
45:10
**buyers**
40:10

— C —

**calendar**
13:13
**call**
5:3 11:5
35:12
**called**
11:5
**capable**
45:17
**carry**
31:5
**case**
34:25
**cash**
22:20 23:11
25:2
**caught**
5:25
**certain**
5:18 12:13,
24 31:20
**certainly**
9:6
**change**
25:13 30:5
41:4
**changes**
5:15 18:22
**changing**
41:23
**chasing**
31:7
**chew**
46:13
**chocolate**
45:5
**circumstances**
9:13 18:13
**claim**
8:8
**claiming**
15:13

**clarification**
22:24 23:1,
4,7,18 32:19
35:2,10
**clarification
s**
36:23
**clarified**
17:1
**clarify**
37:1
**clarifying**
18:19
**clarity**
42:6
**clause**
15:7
**clear**
11:10 40:8
**clearly**
29:18
**CLERK**
39:6
**client**
7:25 15:1
32:2
**client's**
17:19
**close**
10:4,8,20
11:24 12:5,
11,15,18,23
13:9 14:3,14
17:9 18:4
19:10,12
25:3 31:4,8,
19,24 34:10
36:23 45:10
46:25
**closed**
11:19 19:7
20:7 46:7
**closing**
6:4 10:18
11:14 13:8
14:1 26:12
27:3 28:3

29:7 30:18
45:17
**closure**
45:13
**Colaitis**
5:4,7,9,17,
23 6:19
10:7,10,15
11:5,23
12:10 13:4,
15,18 14:9,
13,17,21
17:7,25 18:1
23:10 25:25
26:1,5,9,13
36:2,9,12,15
37:12,13,19,
21,22 38:10,
15,18,21,24
39:3,15
40:8,13,19,
22 44:6,8
46:18,20,24
**colloquy**
29:10
**come**
33:18
**comment**
28:7
**comments**
18:20
**commercially**
8:16,21,22
9:2
**commitment**
12:17 13:5
**compete**
28:13
**component**
22:20
**concluded**
47:3
**concludes**
44:11
**conclusion**
27:17 39:24
40:2

condition
  11:6
conditions
  7:6,9 8:20
confirm
  14:25 28:20
confirmation
  17:16 30:21
  32:1
confirmed
  23:13
confronting
  28:11
confused
  13:2
conjunction
  32:21
connection
  8:4
consequences
  31:24
consideration
  45:18
considered
  20:17
Considering
  17:7
consistent
  19:25 20:5
  46:16
consultation
  21:19 33:15
  37:8 46:8
consulting
  33:13
contingency
  17:21
continue
  18:14 43:25
contract
  5:3,15,17
  6:1,20 7:18,
  25 10:17
  17:1 19:5,8,
  10 20:7
  21:3,6,10
  22:19 23:2,

21 24:7
  29:16 41:11
contracts
  5:10,12 17:2
convey
  18:2,9
copies
  16:13,20
correct
  8:14 13:15,
  18,24 14:12
  16:24 37:22
  38:3,23
  39:3,7 40:11
  41:11,15
  42:20
correctly
  7:18
counsel
  6:19 18:19
  19:23,24
  20:20 43:13
course
  40:3
court
  11:1 13:11
  17:15 27:15,
  19 29:11,13
  34:1
Court's
  29:13
cover
  9:7
coverage
  8:25
crazy
  44:20
credit
  19:16 20:13
  21:14 28:16,
  17,21,23
  34:9 43:17
credited
  30:5
creditor
  43:15

curious
  42:25 43:2
cutting
  20:3

————————————

D

————————————

damage
  8:9
date
  10:19 12:5
  27:3 28:3
  29:7
day
  13:12,14
  41:18
days
  7:2 10:19
  11:17,18
  13:23 14:3,6
  17:21 28:3
  29:7
deal
  7:23 11:11
  18:8,14,23
  40:23
dealt
  8:3 22:5
debtor
  19:14,24
  27:18 29:17,
  23 30:3
  32:21 35:15
  36:4
decision
  31:10,12
declared
  21:7 33:2
deemed
  45:10
deeming
  46:14
default
  15:13,14,16
  19:15
defaults
  40:24

defined
  30:15
demands
  15:23 16:21
depending
  27:5
depends
  28:25
deposit
  18:23 19:16
  20:8 21:1
  22:20,25
  23:20 24:14,
  23 25:2,10
  26:11 27:1
  29:17 30:5
  34:9
deposited
  24:7
deposits
  22:19 23:8,
  12 41:1
destructive
  34:25
deter
  25:12
determination
  21:20,23
  31:15 32:22
  33:6
determines
  34:2
different
  9:20
difficult
  28:12,19
direct
  39:1,2
direction
  29:12
directly
  38:15
disclosed
  24:22
discretion
  37:4

**discuss**
  11:12
**discussed**
  30:10
**discussion**
  16:9 27:7
  32:16 36:3,
  11
**discussions**
  35:15,20
  36:14,18
**disposition**
  25:11 31:20
  35:16
**dispute**
  31:13
**disqualify**
  12:2 18:7
**docket**
  27:19 47:2
**documents**
  9:1
**doing**
  11:8 22:12
**dollars**
  21:17,18,22,
  25
**down-payment**
  41:15
**due**
  6:3 15:20
  43:4,7,10
**dues**
  16:22
**Dweck**
  17:3,6 23:24
  24:5 34:1,12
  36:25 37:11

———————

            **E**

———————

**effect**
  15:11 16:18
**either**
  29:12 35:21
  36:14

**Eli**
  17:6
**eligible**
  23:15 39:16
**elongate**
  18:10
**end**
  27:21 41:20
**ending**
  11:17 45:9
**ends**
  32:20
**energy**
  44:19
**entitled**
  16:20 28:22
  39:24 43:21
**entity**
  19:8 20:10
**entity's**
  20:12
**Essentially**
  8:25
**estate**
  6:5 7:3,20
  14:12 19:17
  20:21
**event**
  34:1
**everybody**
  37:9
**Everyone**
  23:14
**evidence**
  34:20
**exceeding**
  9:9
**excluded**
  6:6
**excludes**
  6:16
**exclusion**
  6:1,3
**executory**
  21:3
**exempt**

  9:14,20
**exemption**
  10:2
**exercised**
  11:2
**exist**
  22:4 25:9
**existed**
  25:10
**existing**
  9:17 15:10
  21:2,6
**explained**
  19:23
**express**
  20:6,11
**extends**
  19:6
**extent**
  6:25 12:1,3
  18:5,12 40:9
**external**
  18:13

———————

            **F**

———————

**fact**
  11:15 25:13
**fair**
  9:2 18:8
  30:18 33:4
  40:7 43:22
**fairly**
  8:2
**faith**
  36:21
**false**
  31:7
**familiar**
  26:15,19
**far**
  21:24
**feel**
  41:6
**file**
  23:8 25:19

**27:18 46:16**
  47:1
**final**
  14:8 33:9
**financial**
  34:19
**financing**
  13:8 35:22
**finding**
  33:19
**finish**
  29:5
**first**
  5:24
**five-minute**
  33:16
**flow**
  7:4
**follow**
  22:14
**following**
  15:9 27:16
**follows**
  16:4
**forbearance**
  29:19 30:6
**force**
  15:11
**forfeit**
  20:10
**forfeited**
  20:9
**forfeiture**
  29:20
**form**
  5:25
**forth**
  22:17
**Fortress**
  35:3,4
**forward**
  21:9
**free**
  41:6
**Friday**
  10:4,8,20

11:25 12:5,
11,23 13:10,
17 14:1 18:5
46:14
**full**
15:11 46:14
**fund**
14:17,19
**funds**
20:11 24:7
31:4

---

**G**

---

**game**
45:8
**gave**
5:13 32:1
**getting**
22:15 28:15,
16 43:14,15
**Gindi**
5:14 6:11
19:24 20:9,
12,19 21:8
22:4,20
23:11,18,19,
20 24:20
25:8 28:20
29:18,22
30:14,15
33:17,24
36:5,7,13,
16,19 37:18,
23,25 41:7,
9,12,16 43:5
44:3,5 46:10
**Gindi's**
22:5
**Gindis**
32:7
**give**
7:15 23:5,6
25:3 30:19
44:18 45:5
**goal**
10:12

**goes**
31:16
**going**
5:16 7:8
11:8,11
13:7,9 17:2,
17 20:19,20,
24 21:11
22:6,9,21
23:5,6,19
24:11,18
25:12,14,25
27:13 30:11
31:12,14
32:13 33:15,
17 34:10
35:13 37:3,4
38:4 41:20,
21 44:16
46:12,13,16,
25 47:1
**good**
36:21 37:2,
9,12,13
46:22
**good-faith**
35:12
**Greenwich**
27:17,23
**gross**
21:17,18,22,
25
**grounds**
19:14
**Group**
13:4 33:24
**guess**
38:25
**guys**
37:9 38:6
43:13 45:16
47:2

---

**H**

---

**hands**
11:17

**happen**
12:25
**happy**
22:13
**harmless**
8:7
**head**
40:17
**hear**
9:24 15:5
16:6 19:11
20:3 21:12
24:24 27:21
30:1 34:5
**heard**
17:7 34:14,
15,16,18
**hearing**
33:7
**heart**
41:5
**high**
27:6
**higher**
17:12 25:13
31:6 46:10
**highest**
21:16,20
22:2,7,10
26:7,8 27:2
28:5,24,25
30:12,13,21
31:11,25
32:20,23
33:3,6 35:1
41:24
**highly**
19:4
**hit**
23:13
**hold**
8:7 19:14
**holding**
23:12,14
**horse**
21:8

**hour**
36:22
**Hudson**
13:4

---

**I**

---

**i.e.**
11:15 15:17
**identifying**
27:19,22
**impatient**
37:6
**important**
32:1
**impossible**
12:4,7,9
**impression**
31:4
**inaudible**
14:4 15:3
19:10 20:1
24:23 27:19
29:24 32:24
44:24
**included**
14:22
**includes**
6:15 32:2
**increased**
46:11
**increments**
37:1,3 41:23
**indemnify**
8:7
**indemnity**
7:20,22 8:13
14:11
**independent**
22:19 29:4
**indicated**
22:25
**informed**
11:3
**inserted**
28:4 29:6

insisting
  16:5
insurance
  8:16,18,22,
  23 9:8
  12:19,20
intent
  10:7,11 18:4
interject
  17:25
internet
  15:18
investment
  22:8
involved
  22:13
irrevocable
  28:1
issue
  18:22 21:1,
  15 22:8
  24:20 25:7
  28:14 29:13,
  16 30:11
  32:9
issued
  15:23,24
issues
  22:3
items
  12:16

J

James
  19:21 23:16
  28:9 29:14
  33:10
Jay
  5:2 16:16,17
  20:14 22:23
  30:24 32:19
Jesse
  6:18 11:23
Jim
  18:18 32:4
  39:19 42:1

43:16 45:3
JLL
  7:18,23 8:13
job
  21:15
join
  20:15
Judge
  13:13 17:18
  29:5 33:5,9
jump
  8:11 10:16
  11:24 12:12
  19:20 41:6
  44:7
jumped
  31:25

K

keep
  13:23 17:21
  28:4 31:10
Keeping
  29:6
Kevin
  15:7 16:11
  19:21 24:10
  27:9 28:7
  40:9
know
  9:11 10:18
  12:8,13,21
  15:24 17:18
  18:22 21:17
  22:14 24:21
  25:17 28:12,
  14 37:5
  45:16
knowing
  13:10
knowledgeable
  25:23

L

Ladder
  18:19 19:22
  23:17 28:10
  29:15 32:5
  33:11,24
  34:3,13
  35:3,20
  36:11,18
  43:13
landlord/
tenant
  15:25
language
  14:22 20:11
  29:21
late
  13:12,13
law
  34:25
lawyers
  11:2 22:5
  30:14
lead
  22:14
lease
  7:7
leases
  6:8 15:10,16
leave
  24:19
legality
  45:11
legions
  34:24
lender
  9:17 11:12
  12:17,18
  13:2,9 21:19
  22:4,6 25:7,
  9 29:19,22
  32:22 46:9
lender's
  19:25 20:5
  29:23 30:2

46:9
letter
  13:5
liability
  8:8 12:1
line
  6:13
lines
  22:22 25:15
listen
  45:3
litigated
  31:14
little
  13:2 23:5,22
LLC
  20:16
loan
  9:1
longer
  39:16
look
  6:24
looking
  7:19,21
  14:10 21:21
  44:22 45:2,3
looks
  6:12
lose
  32:9
loss
  9:9
lost
  8:8
luck
  46:22

M

made
  18:22 21:25
  22:25
maintain
  26:11 27:1

**make**
5:14 8:2
15:9 16:4
17:3 18:2
20:23 21:19,
23 24:11,22
25:1 28:6,20
30:7 31:10,
12,14,22
32:22 33:5,
6,7,12,18
34:19,22
37:16
**makes**
18:14
**manager**
15:22
**managers**
15:20
**March**
11:15,20
14:15 17:9
**marked**
5:12
**market**
11:7
**material**
5:14
**matter**
11:21,22
**mean**
8:15,22 9:5
10:13,15
12:7 24:21
41:19
**means**
6:3 38:25
**meet**
11:9
**million**
20:8 21:14
22:19 23:2,
6,20 34:2,8
40:13 41:6
42:3
**mind**
23:14

**misrepresente
d**
18:3
**misses**
40:6
**mistaken**
29:10
**moment**
7:15
**monetary**
15:16
**money**
23:3 25:5,8
43:14,15
**months**
8:1
**moot**
17:18,22
**morning**
13:10
**mortgage**
9:14,18,20
10:1
**Moshe**
33:18
**move**
37:7
**moving**
37:7
**Munchkin**
44:18 45:5

---

**N**

---

**name**
5:5
**Nash**
5:9,24 6:21
7:5,13,17
8:5,12,15,19
9:4,12,19,22
10:1,9,13,23
12:6 13:1,7,
16,21,25
14:7,10,14,
19,24 15:3,
6,7 16:7,17,

25 17:5,13
18:16,21
19:2,18
20:18 23:4,
22 24:2,9,13
25:6,18,22
26:2,6,10,
14,19,22,25
27:13,22
28:8,18 29:4
30:8 31:2,9
32:10,13
33:4,14,22
34:7,13,16,
21 35:6,9,19
36:2,7,10,
13,17,20
37:2,12,14,
23 38:1,4,
11,17,19,22
39:1,4,8,15,
21 40:1,7,
12,16,20,25
41:10,13,17
42:1,3,8,12,
16,19,21,24
43:3,7,12
44:3,6,10,
13,16 45:2,
15,19,23
46:2,6,22,25
**necessarily**
32:24 33:1
**necessary**
12:14,20,22
27:11
**need**
16:12 21:24
30:9,16
36:25
**needed**
11:14
**needs**
12:18
**never**
20:7 21:3
**news**
17:17

**nicely**
28:2
**nine**
8:1
**note**
24:21
**notice**
11:9 15:12
27:18 41:3
**notices**
16:13,21
22:15
**Notwithstandi
ng**
27:24
**November**
11:17
**novice**
43:1
**null**
40:14,16
**number**
20:24 21:12,
13 28:13
32:23 45:14
**numbers**
37:20

---

**O**

---

**objection**
20:15 25:17,
19
**obtain**
46:9
**occur**
14:1
**off-the-
record**
16:9 27:7
32:16
**offer**
21:16 28:15
33:3 44:22
46:10,11
**offers**
25:14

**okay**
5:9,20,23
6:22 8:5,12
9:19 10:23
12:9 13:1,2,
25 14:20
16:25 18:16
19:2,18
20:21,23
23:9,14
24:3,14,15
25:20 26:2
27:13,15
29:6 30:8
32:15 33:19,
22,23 34:13,
21,22 36:13
37:8,14
38:4,11,22
39:8,15 40:7
41:3,6,10
43:14 44:10,
16 45:15,19,
23 46:22
47:2

**omit**
16:11

**once**
21:17 30:12
37:6

**one**
7:15 12:16
14:25 16:2
20:24 21:12
27:4 30:20
35:14 38:5
41:21 42:16
43:10

**open**
20:25 21:11
22:8 30:22

**operating**
17:14

**operative**
29:16,20

**order**
9:18 12:14,
18,25 13:11

14:7 17:15
27:12

**outstanding**
16:21

**owes**
15:17

**owner**
43:5,6

---

**P**

---

**p.m.**
33:20,21
46:4,5 47:4

**page**
8:20

**paperwork**
11:16

**paragraph**
7:14,16 8:19
15:8

**part**
6:9 29:8
33:15 42:12

**party**
8:6

**passed**
43:22

**past**
15:20 16:22

**payment**
30:6

**pays**
14:16 43:5

**people**
31:19 33:17
37:5

**percent**
24:23 25:2
28:16 46:14

**perform**
40:10,23

**permits**
10:18

**person**
45:9

**perspective**
12:4 20:21

**persuade**
22:7

**petition**
21:7

**phase**
43:23,24

**place**
12:20,24
31:11

**plan**
14:15

**play**
21:4 25:5
28:5 45:8

**point**
13:4,23
21:21 27:6
37:2

**portion**
6:13

**pose**
5:18

**posed**
33:23

**position**
17:23 19:25
20:5 21:9,11
29:23,24
30:1,3,4,9,
15,16,19

**possibility**
31:18

**possible**
10:8 15:25
18:6

**post-closing**
18:24

**posted**
15:17

**potential**
21:7

**practical**
27:16

**pre-closing**
6:2,8,16

**pre-petition**
7:19 20:6

**precluded**
39:12 40:5

**prejudiced**
9:11

**premise**
11:13

**Premises**
8:20

**prepared**
12:22 26:2,
6,10,22,25

**preserve**
9:18

**pretence**
31:8

**previously**
19:23

**price**
34:4,6 40:11

**prior**
6:4 7:25
19:6 23:2
40:11

**probably**
13:10

**problem**
28:11 30:25
32:6

**procedure**
46:13

**procedures**
5:12 24:17
25:24 26:4,
16,20,23
27:14 29:9
30:23 32:3
39:14,19
40:4

**proceed**
10:21 22:9,
21 25:14

**proceeding**
16:1 21:6
25:12 30:6

proceedings
    47:3
proceeds
    25:3
process
    18:11 20:25
    21:12 22:1
    34:24 43:22
promised
    30:7
pronounce
    5:5,8
property
    6:5 8:4
    27:23 43:5,6
proposal
    17:19
proposing
    25:3
prospective
    19:15
proved
    31:21
provided
    10:17
provides
    10:18
PSA
    14:22 29:21
publications
    22:16
pull
    6:25
purchase
    34:4,6 35:12
purchaser
    7:4 19:15
    20:9 29:18,
    22
purchasers
    35:13
purchases
    20:1
purposes
    21:5
pursing
    12:3

pursuing
    18:14 22:7
pursuit
    18:7
put
    10:24 12:20,
    24

---

**Q**

---

qualified
    20:17 45:10
question
    10:3 14:25
    16:3 19:3,19
    20:12,16
    26:15,18
    27:10,11
    29:21 33:23
    34:7 36:1,3
    39:2 42:23
    43:23
questions
    5:18 17:1
    18:20 19:1,
    7,9 35:14
    43:8,21
quick
    11:14

---

**R**

---

Randal
    36:6,7
Raymond
    36:5
re-notice
    40:25 41:2
reading
    7:17
ready
    10:4 13:9,16
    14:2
realize
    22:9
reason
    18:6

reasonable
    8:16,21,23
    9:3
recap
    13:22,25
receivable
    6:2
receive
    17:11 37:15
received
    5:2,10 12:21
    15:19 22:18
    23:8,9,10
    37:15,17,18
recess
    33:16
recommendatio
n
    33:5,8,13
record
    32:7 33:20,
    23 36:21
    46:4,7
redline
    5:14 6:20
    8:21
refer
    23:19
regarding
    24:20 31:20
    36:4,8,11,
    15,18
regular
    13:13
relates
    29:18
relating
    29:16
released
    24:15 25:8,
    10
remaining
    9:8
remains
    6:4 15:14
rent
    15:12,18,19,

21,22,23
    16:21 17:22
rents
    6:2,8,16,17
    13:23
rep
    8:3
repeat
    26:17
Replacement-
cost
    8:24
report
    22:14
representatio
n
    15:7 16:5,
    12,19 24:11,
    12
representatio
ns
    15:9
request
    9:16
requesting
    12:19 38:11
require
    18:13
required
    9:1
requirement
    10:9,11,14
    11:1,9
resolved
    22:11
respect
    7:11 43:4,8,
    10
respond
    10:6 20:19,
    20
response
    33:25 35:23
results
    46:16
retained
    7:24 34:2

**return**
  20:10
**reviewed**
  25:23
**right**
  9:10 13:21
  14:25 16:25
  20:10,18
  24:16 25:22
  29:2 30:19
  31:2 33:14
  35:4,7
  37:17,20
  38:7,13 39:8
  40:1,17,19,
  21 41:19
  42:13,15,18
  44:11,15,17,
  21 45:24
  46:6
**rights**
  43:16
**risk**
  31:23
**roll**
  15:18,19
**round**
  38:5 40:6
  41:20,21,22
  44:11,14,17,
  21,22
**run**
  20:25 22:12
  34:23 43:21

──────────────
            **S**
──────────────

**sale**
  6:6,9 7:7
  17:17 19:5
  28:3
**Sasson**
  33:18
**saying**
  43:9,10
**says**
  6:24 8:6,10

**second**
  24:17
**see**
  6:22 12:15
  30:12 31:16
  37:6 43:13
  45:4,12
**seeking**
  38:6
**selection**
  27:24 29:12
**seller**
  6:6 7:25
  15:8,11 16:4
  45:11
**seller's**
  7:20 12:4
  14:11
**send**
  6:19
**sense**
  18:15
**sentence**
  8:6
**September**
  11:19
**set**
  7:13
**Setting**
  12:17
**short**
  11:9
**show**
  35:11
**showed**
  11:16
**showing**
  15:20
**signed**
  10:17
**significant**
  12:1
**slowly**
  37:7
**soliciting**
  30:20

27:16 34:7

**Solomon**
  5:2 15:2
  16:10,11,16,
  17,24 18:25
  19:4,13
  20:14 22:23
  24:19 25:1,
  6,16,21
  27:4,8,9
  30:24 31:3
  32:17,18,19
  34:16,18
  36:1 42:15,
  18,20
**Solomon's**
  15:1
**solve**
  32:5
**Spatz**
  5:1,13 6:10
  16:10 20:15
  22:24 23:10
  26:14,17,21,
  24 27:8
  30:25 32:17
  35:17,18,23
  36:14 37:16
  38:1,3,9
  41:20 42:4,
  6,9,22,25
  43:4,9 44:2,
  22 45:7,16,
  22 46:15
**speak**
  28:22 30:13
  32:10 33:17
  38:8
**speaking**
  16:15
**spiel**
  44:18
**split**
  9:17
**spot**
  10:24
**stalking**
  21:8

**stand**
  32:8
**standing**
  20:22 25:18
  34:23 35:1
**start**
  25:25 30:11,
  17 31:15
  35:11 37:4,6
**started**
  16:1 31:1
**starting**
  44:21
**statement**
  11:11 17:4
  32:6 34:19
**stats**
  35:12
**stay**
  39:24 40:2
  42:10
**STENOGRAPHER**
  9:24 14:5
  15:4 16:6,14
  19:11 20:2
  24:24 27:20
  29:25 32:25
  34:5 35:24
  42:2 44:25
**strictly**
  7:11
**struck**
  6:13
**stuff**
  43:1
**subject**
  9:9
**submitted**
  6:20 11:16
  13:6
**successful**
  27:23,25
**support**
  46:9
**sure**
  15:24 18:2
  28:8 37:16

42:8,9 43:3
Surely
  42:24
surprise
  41:5

_____

**T**

take
  6:23 9:9
  21:8 27:5
  29:24 30:3,
  9,16 33:15
  41:1 46:1,2
taken
  45:18
taking
  16:18
talk
  32:14
talking
  13:3 16:7,8
tax
  9:14,18,20
  10:2 12:1
  14:16,18,20
tell
  27:14 32:14
telling
  11:20
tenant
  7:9 15:12,
  13,17
tenants
  6:4 7:1,7
  13:22 15:10
  16:2,23
terminate
  9:10
terminated
  8:2 21:4
terms
  5:11 7:7
  10:22 19:25
  20:6 22:15
  41:11,13,14

thank
  39:9 42:1
  46:18 47:2
thereto
  36:23
thing
  5:24
things
  12:14,19,24
  30:20 45:18
think
  8:10 9:1,15
  11:18 16:20
  17:17,22
  18:8,21 19:4
  27:4 28:10,
  18,19,20,22
  29:5,11
  30:8,10,16,
  17 32:1
  36:21,22,25
  39:9,13,18,
  21,23 42:12,
  21 43:18
  45:25
thought
  24:8
three
  5:10 22:18
  23:12 37:15
  44:12
threshold
  9:7,10
Thursday
  13:12,14
tight
  22:12
time
  14:3 17:11
  22:12 39:9
  41:18 46:19
Times
  22:16
today
  21:6,15 22:1
  23:15 30:9
  39:9

toes
  11:18
told
  13:20
tomorrow
  17:16 29:8
touch
  5:1
train
  22:12
transfer
  14:16,18,20
transparent
  34:24
treatment
  41:15
trying
  18:2,9 20:25
  34:23
turnaround
  11:14
two
  20:24 21:13
  30:20,21
  35:13 40:17
  41:22
two-minute
  33:16

_____

**U**

uncured
  15:14
underscored
  28:1
understand
  5:13,19 7:10
  9:12,21
  10:24 15:21,
  22 25:16
  31:23
understanding
  7:24
understood
  39:12 40:22
unusual
  19:5

vacate
  7:1,6,9
  13:22
vacated
  7:1
value
  30:4
various
  17:2
Vincequerra
  18:18 19:20,
  21 20:4
  23:16,17,25
  24:3,10
  28:6,9,10
  29:2,14,15
  30:2 32:4,12
  33:2,10,11
  34:15 35:5,8
  36:6 39:11,
  18,20,23
  40:3 41:25
  43:16 44:12,
  14,24 45:25
vitality
  44:19
void
  40:14,17
voluntarily
  46:11

_____

**W**

want
  10:5,23
  11:10 12:2,8
  15:21 16:13
  18:1,4,6,12,
  13 21:25
  25:19 37:16
  41:5 42:10
  43:17,21,25
  44:7 45:7

**wanted**
  11:7 14:24
  15:8
**watch**
  41:4
**way**
  43:17
**window**
  7:14
**words**
  16:18
**worry**
  41:3
**write**
  38:6
**wrong**
  31:21

---

## Y

---

**Yeah**
  8:19 12:12
  24:9 46:20
**yesterday**
  5:1 23:9
**yield**
  21:15
**yielding**
  43:8
**yo**
  8:15
**York**
  22:16
**Young**
  5:21 6:18,23
  7:10,15,21
  8:10,14,17,
  24 9:6,15,21
  10:5,16
  12:12 13:19,
  24 14:23
  17:8

---

## Z

---

**Zach**

  36:4
**zero**
  28:16
**zoning**
  29:13