MORITT HOCK & HAMROFF LLP
Theresa A. Driscoll
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000
tdriscoll@moritthock.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| ZRG, Inc., | Case No. 25-40464-NHL |
| 90 Nassau Street LLC, | Case No. 25-41126-NHL |
| 385 Greenwich Street LLC, | Case No. 25-41127-NHL |
| Debtors. | Jointly Administered |

---

### NOTICE OF HEARING ON RANDAL GINDI'S MOTION FOR ORDER DISALLOWING AND EXPUNGING CLAIMS FILED BY ZACHARY GINDI AND 385G LLC

PLEASE TAKE NOTICE THAT a hearing will be held before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge for the Eastern District of New York via Zoom for Government on November 13, 2025, at 3:30 p.m. (the "Hearing") to consider Randal Gindi's Motion for an Order Disallowing and Expunging Claims Filed by Zachary Gindi and 385G LLC (the "Motion").

PLEASE TAKE FURTHER NOTICE to appear at the Hearing, you must register with eCourt Appearances no later than two days prior to the hearing. The phone number or video link for the hearing will be emailed to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances: https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl.

PLEASE TAKE FURTHER NOTICE that objections to the relief sought in the Motion shall be in writing, shall conform to the Bankruptcy Rules and Local Bankruptcy Rules, shall specify the name of the objecting party and state with specificity the basis of the objection, and shall be filed with the Clerk of the Court through the ECF system to registered users, or by delivering a hard copy and a compact disk containing that document in Word, Word Perfect or PDF format to the Clerk of the Court, United States Bankruptcy Court for the Eastern District of New York, and simultaneously served so as to be received no later than November 6, 2025 at 4:00 p.m. by: Moritt Hock & Hamroff LLP, 400 Garden City Plaza, Garden City, NY 11530, Attn: Theresa A. Driscoll, Esq., attorneys for Randal Gindi; and Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, NY 10004.

PLEASE TAKE FURTHER NOTICE that the Hearing may be adjourned without further notice other than the announcement of such adjournment in open Court or by the filing of a notice of such adjournment on the docket sheet for the Debtors' case.

PLEASE TAKE FURTHER NOTICE, that you need not appear at the Hearing if you do not object to the relief requested in the Motion.

Dated: October 7, 2025
      Garden City, New York           MORITT HOCK & HAMROFF LLP

                                         By: /s/ Theresa A. Driscoll
                                              Theresa A. Driscoll

400 Garden City Plaza
Garden City, NY 11530
(516) 880-7278
tdriscoll@moritthock.com

*Attorneys for Randal Gindi*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| ZRG, Inc., | Case No. 25-40464-NHL |
| 90 Nassau Street LLC, | Case No. 25-41126-NHL |
| 385 Greenwich Street LLC, | Case No. 25-41127-NHL |
| Debtors. | Jointly Administered |

-------------------------------------

## MOTION FOR ORDER DISALLOWING AND EXPUNGING
## CLAIMS FILED BY ZACHARY GINDI AND 385G LLC[1]

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

Randal Gindi, as the fifty-percent owner and creditor of ZRG, Inc. ("ZRG") and Manager, indirect 50% owner, manager and creditor of each of Debtors 90 Nassau Street LLC ("90 Nassau Debtor") and 385 Greenwich Street LLC ("385 Greenwich Debtor" and together with 90 Nassau Debtor, the "Real Estate Entity Debtors" and together with ZRG, the "Debtors"), by and through the undersigned counsel, hereby submits this objection to the claims filed by Zachary Gindi and 385G LLC, and in connection therewith, respectfully represents:

### BACKGROUND

A. The Debtors

1. 90 Nassau Debtor is a limited liability company formed under the laws of New York.

2. Pursuant to that certain Second Amended and Restated Operating Agreement of 90 Nassau Debtor dated as of August 10, 2021 (the "90 Nassau Operating Agreement"), Randal

---

[1] The following claims are being objected to herein: (i) ZRG Claim Nos.: 9 and 10; (ii) Nassau Debtor Claim Nos.: 11 and 12; and (iii) Greenwich Debtor Claim Nos. 9 and 10. Annexed hereto as Schedule A are copies of these claims.

Gindi is designated as its Manager. A copy of the 90 Nassau Operating Agreement is annexed hereto as **Exhibit 1**.

3. 90 Nassau owned the real property located at 90 Nassau Street, New York, New York 10038 (the "90 Nassau Property").

4. 385 Greenwich Debtor is a limited liability company formed under the laws of New York.

5. Pursuant to that certain Second Amended and Restated Operating Agreement for 365 Greenwich Debtor dated as of August 10, 2021 (the "385 Greenwich Operating Agreement"), Randal Gindi is designated as its Manager. A copy of the 385 Greenwich Operating Agreement is annexed hereto as **Exhibit 2**.

6. 385 Greenwich Debtor owned the real property located at 385 Greenwich Street, New York, New York 10013 (the "385 Greenwich Property" and together with the 90 Nassau Property, the "Properties").

7. ZRG is the 100% member of each of 90 Nassau Debtor and 385 Greenwich Debtor. The shareholders of ZRG are Randal Gindi (50%) and Zachary Gindi (50%).

B. The Debtors' Mortgage Loans

8. On or about November 5, 2021, Ladder CRE Finance REIT Inc. (together with any successors and assigns, "Ladder") made a mortgage loan to the Real Estate Entity Debtors (the "Ladder Loan") secured by, *inter alia*, the Properties and a pledge of ZRG's interests in the Real Estate Entity Debtors.

9. On or about November 7, 2023, Ladder provided the Real Estate Entity Debtors with notice of default under the Ladder Loan based on a maturity date default on November 6, 2023.

10. Pursuant to an extension and modification agreement dated on or about November 27, 2023, Ladder agreed to extend the maturity date under the Ladder Loan to May 6, 2024 conditioned on, among other things, the Real Estate Entity Debtors engagement of a broker to sell the Properties.

11. The Real Estate Entity Debtors failed to sell the Properties and payoff Ladder by the extended maturity date of May 6, 2024. As a result, Ladder send a demand for payment on May 22, 2024 as well as served a Notice of Disposition of Collateral pursuant to Article 9 of the Uniform Commercial Code.

12. Following Ladder's commencement of a foreclosure process for the sale of the ZRG's pledged interests in the Real Estate Entity Debtors, Ladder agreed to forbear from enforcement until October 4. 2024 so that the Debtors could consummate sales of the Properties pursuant to initial contracts of sale obtained and provided to Ladder.

13. The Real Estate Entity Debtors failed to close the sales of the Properties by September 22, 2024.[2] Ladder agreed to a further forbearance of its exercise of remedies pursuant to an Amended and Restated Forbearance Agreement dated as of October 2, 2024 ("Amended Forbearance Agreement") which extended the expiration of the forbearance through October 30, 2024 and conditioned such extended forbearance upon the Real Estate Entity Debtors' paydown of the outstanding principal due under the Ladder Loan. Specifically, the Amended Forbearance Agreement required a principal paydown in the amount of $1,000,000.00 (the "Required Paydown"). A copy of the Amended Forbearance Agreement is annexed hereto as **Exhibit 3**.

---

[2] 385 Greenwich Debtor was unable to close on the Agreement for Purchase and Sale dated July 18, 2024 with 77 Woodedge, LLC for the Greenwich Property, because Zachary refused to waive or terminate his right of first refusal with respect to the Greenwich Property. Accordingly, and Real Property Debtors defaulted under the Forbearance Agreement.

14. On or about October 2, 2024, 385 Greenwich Debtor, as seller and an entity affiliated with Zachary Gindi, 251 Church Street LLC (as assigned to 385G LLC, "385G"), as purchaser entered into that certain Agreement of Purchase and Sale (that "385G Purchase Agreement")[3] with respect to the Greenwich Street Property. A copy of the 385G Purchase Agreement is annexed hereto as **Exhibit 4**.

15. The 385G Purchase Agreement required 385G to, among other things, pay a deposit of $1,075,000.00 ("385G Deposit") upon execution thereof. Additionally, 385G agreed and consented to $1 million of the Deposit being immediately available to 385 Greenwich Debtor for the transfer in full to Ladder in respect of the outstanding obligations due under the Ladder Loan and as the Principal Paydown required by the terms of the Amended Forbearance Agreement. *See* 385G Purchase Agreement, § 2.

16. 385G failed to close on the sale of the 385G Purchase Agreement by the October 30, 2024 deadline set forth in the Amended Forbearance Agreement.

17. Based on the default under the Amended Forbearance Agreement, Ladder terminated the forbearance thereunder and, on November 4, 2024, Ladder served a second Notice of Disposition of Collateral, noticing a sale of ZRG's membership interests for December 20, 2024.

18. Ladder reschedule the sale a third time and by notice dated January 6, 2025, rescheduled the sale of ZRG's membership interests to January 30, 2025.

C. Partial Settlement Agreement Between Randal Gindi and Zachary Gindi

19. By agreement dated as of October 2, 2024, Randal Gindi and Zachary Gindi, each as the 50% owners of ZRG, agreed to partially settle certain issues arising from an Option

---

[3] Pursuant to that certain Assignment and Assumption Agreement of Purchase and Sale dated November 11, 2024, 251 Church Street LLC assigned all of its right, title and interest in, to and under the Contract to 385G LLC.

Agreement dated July 25, 2023, the liability to Ladder under the Ladder Loan, and the sale of one or both of the Properties. A copy of the Partial Settlement Agreement is annexed hereto as **Exhibit 5**.

20. Pursuant to the Partial Settlement Agreement, Zachary Gindi agreed that any claims related to the proper allocation of responsibility for the Principal Paydown, as among Zachary Gindi and Randal Gindi, shall be determined in an arbitration proceeding pending before JAMS, New York (the "JAMS Arbitration").

D. The Bankruptcy Filings

21. On January 29, 2025 ("ZRG Petition Date"), ZRG filed a chapter 11 petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in this Court, the effect of which stayed Ladder's foreclosure efforts.

22. On March 6, 2025, each of the Real Estate Entity Debtors each filed chapter 11 petitions for relief under the Bankruptcy Code in this Court. The Debtors' chapter 11 cases are being jointly administered pursuant to an Order Granting Joint Administration entered on April 21, 2025 [Dkt. No. 28].

23. By Amended Order entered on May 15, 2025, and pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Court fixed July 9, 2025 (the "Bar Date") as the date by which proofs of claims or interests were required to be filed in the Chapter 11 Cases.

24. On July 11, 2025, the Court entered an Order [Dkt No. 84] ("Confirmation Order"). confirming the Debtors' Joint Chapter 11 Liquidating Plan of Reorganization [Dkt No. 33] (the "Plan").

25. Pursuant to the Plan, the Debtors consummated the sale of the Greenwich Property to 385 Blank Page LLC on July 25, 2025. The purchase price under this sale contract was $8,500,000 (the "Greenwich Purchase Price").

26. Also pursuant to the Plan, the Debtors consummated the sale of the 90 Nassau Property to Bernart Capital LLC on August 8, 2025. The purchase price under this sale contract was $10,250,000.00.

27. As of August 25, 2025, the Disbursing Agent under the Plan is holding the net balance from the two sales totaling $956,930.25.

28. The Effective Date of the Plan occurred on August 8, 2025 [Dkt. 90] ("Effective Date").

29. The Plan provides for a deadline for objections to claims to be filed thirty (30) days after the Effective Date of the Plan. Thus, objections to claims were due to be filed by September 8, 2025.

30. Pursuant to a Stipulation and Order Extending Claim Objection Deadline Under Confirmed Plan filed with the Court by Notice of Presentment on September 8, 2025, Zachary Gindi, Randal Gindi and each of the Debtors agreed to extend the claim objection deadline under the Plan through the date that is (60) sixty days from the Effective Date, thereby making the current deadline October 7, 2025.

31. Section 5.5 of the Plan provides that "Zach Gindi shall continue to act as the sole manager and responsible person of each of the Debtors to manage the Debtors' post-confirmation affairs through the closings and liquidation of all assets." Plan, § 5.5. The Plan is silent as to Zach Gindi's power to unilaterally reconcile claims filed against the Debtors' estates including without limitation his own claims.

E.  The Disputed Claims

32. Zachary Gindi, in his individual capacity, filed an identical proof of claim against each of the three Debtors (collectively, as amended, the "ZG Claims"). Zachary Gindi asserts claims in an unliquidated amount of "[n]ot less than $75,000." Supplement to Proof of Claim for Zachary Gindi, ¶ 4. The asserted basis of the claim is "loans, advances, and/or capital contributions made to the Debtors made up of various components, including, but not limited to: utilities and other costs and expenses associated with the Properties paid by Claimant (no less than $50,000) and the costs and expenses regarding these Chapter 11 Cases paid by Claimant, which may include filing fees and a retainer fee for the Debtors' counsel (no less than $25,000)." *Id.*

33. Zachary Gindi also caused 385G LLC to file an identical proof of claim against each of the three Debtors (collectively, the "385G Claims" and together with the ZG Claims, the "Disputed Claims"). 385G LLC asserts a claim against the Debtors:

> in an amount to be determined, no less than $3,681.665.62, which includes, but is not limited to: a return of the Deposit ($1,075,000), additional breach of contract damages and other compensatory damages (no less than $2,496,665.62 arising from the difference between Purchase Price and the price contracted for by the Debtors and the current contract vendee), utilities and other costs and expenses associated with the Properties paid by Claimant (no less than $50,000); unjust enrichment damages (unliquidated); potential damages related to fraud, negligent, or misrepresentation (unliquidated); consequential damages related to the loss of the Claimant's ability to use the amount of the Deposit for other purposes, and costs and expenses associated with the Forbearance Agreement and Greenwich PSA transactions arising from the failure of the Debtors to close/sell the Greenwich Property to Claimant, including but not limited to, previous legal and associated fees for such transactions and any costs associated with this Proof of Claim and Supplement paid by Claimant (no less than $35,000).

Supplement to Proof of Claim for 385G LLC, ¶ 13.

34. Randal Gindi, a party in interest in these cases with standing to object to claims, disputes Zachary Gindi's entitlement to recover any of the amounts identified in the Disputed Claims on the basis that such claims are wholly unsubstantiated, contradict clean and unambiguous language in both the Amended Forbearance Agreement and the 385G Purchase Agreement and appliable law.[4]

## JURISDICTION

35. This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and the within objection (the "Objection") in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

36. Randal Gindi, a creditor and party in interest in these chapter 11 cases, hereby seeks entry of an Order disallowing and expunging the following Disputed Claims identified below:

(a) ZRG Claim Nos.: 9-1; 10-1;

(b) 90 Nassau Debtor Claim Nos.: 11-2; 12-1; and

(c) 385 Greenwich Debtor Claim Nos. 9-1; 10-1.

## BASIS FOR RELIEF REQUESTED

37. Pursuant to Section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless <u>a party in interest</u> objects thereto. *See* 11 U.S.C. § 502(a). Randal

---

[4] The Disputed Claims are nothing more than an attempt by Zachary Gindi to circumvent his prior agreement that any disputes by and among himself and his brother, Randal Gindi, with regard to the allocation of excess sale proceeds shall be determined in the pending JAMS Arbitration. *See* Ex. 5 (Partial Settlement Agreement).

Gindi submits that he has standing as both a creditor[5], owner and party in interest in these cases.[6] *See* 11 U.S.C. § 502(a); *see also* 11 U.S.C. § 1109(b)("[a] party in interest, including . . . a creditor, an equity security holder . . . may raise and may appear and be heard on any issue in a case under this chapter"). Zach Gindi, as the estate representative under the Plan and the holder of the Disputed Claims, is incapable of discharging his fiduciary duty to the stakeholders of these estates as he cannot objectively and fairly review the Disputed Claims.

## The Disputed Claims Should be Disallowed

### I. The Disputed Claims Lack Prima Facie Validity

38. Rule 3001(f) provides for prima facie validity of a claim, provided that it complies with the Bankruptcy Rules.

39. Bankruptcy Rule 3001 prescribes the form and content of a proof of claim. Bankruptcy Rule 3001(a) requires that "[a] proof of claim shall conform substantially to the appropriate Official Form." Bankruptcy Rule 3001(c) requires that "[w]hen a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001(f) provides that "[a] claim filed in compliance with Bankruptcy Rule 3001 will be considered a prima facie valid claim."

40. Properly filed proofs of claim are entitled to *prima facie* validity pursuant to Bankruptcy Rule 3001(f). However, "[o]nce an objectant offers sufficient evidence to overcome the *prima facie* validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim." *In re Rockefeller Ctr. Properties*, 272 B.R. 524, 539 (Bankr.

---

[5] Randal Gindi is both an equity owner of the Debtors and a creditor having filed a claim against each of the Debtors for indemnification based on amounts advanced by him to pay the Real Estate Entity Debtors' obligations under the Ladder Loan. *See* ZRG Claim No. 8; 385 Greenwich Claim No. 8; 90 Nassau Claim No. 10.

[6] Here, the estate representative under the confirmed Plan, Zach Gindi, is conflicted from reviewing his own claims.

S.D.N.Y. 2000) (citations omitted). Though properly filed proofs of claim are entitled to *prima facie* validity, Section 502(b) of the Bankruptcy Code provides that a claim shall not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." *See* 11 U.S.C. § 502(b)(1).

41. A proof of claim that violates Bankruptcy Rule 3001 is deprived of prima facie validity. *In re Rally Partners, Ltd. P'ship*, 306 B.R. 165, 168 (Bankr.E.D.Tex.2003); *see also First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J. Dairy, Inc.)*, 112 B.R. 297, 300 (W.D.Ark.1989) ("A proof of claim does not qualify for prima facie evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules."). It is the claimant's burden to allege facts in the proof of claim sufficient to support the claim. *In re Rally Partners*, 306 B.R. at 168.

42. "Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity." *In re Taylor*, 363 B.R. 303, 308 Bankr. M.D. Fla. 2007). Bankruptcy Rule 3001(a) requires that "[a] proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr.P. 3001(a). Moreover, Bankruptcy Rule 9009 requires that the Official Forms "shall be observed." Fed. R. Bankr. P. 9009. Form 10—the official proof of claim form—instructs creditors to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages and security agreements" or a summary of such documents. Form 10 also instructs that "[i]f the documents are not available, please explain." Considering the specificity of these instructions, a creditor cannot substantially comply with Form 10 by filing a proof of claim with no documentation or, at the very least, an

explanation for why such documents are unavailable." *See In re Gilbreath*, 395 B.R.356, 362–63 (Bankr. S.D. Tex. 2008). "The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense." *In re Armstrong*, 320 B.R. 97, 104 (Bankr.N.D.Tex.2005).

43. If the claim is based on a writing, the lack of documentation accompanying the claim is also fatal to the claim. *See In re Drexel Burnham Lambert Grp.*, 148 B.R. 982, 992 (Bankr. S.D.N.Y. 1992) ("Rothschild did not submit a copy of its AAU or any documentation to support its claim. Rothschild's [indemnification] claim is disallowed."); Fed. R. Bankr. P. 3001(c) ("[W]hen a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim."); *see also In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010) ("[I]n certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b), because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim.").

44. Here, the Disputed Claims summarily assert entitlement to indemnification, reimbursement and damages but fail to substantiate such entitlement with any documentation or explanation of the legal theories upon which the Disputed Claims are based.

45. The Disputed Claims should not be afforded the presumption of *prima facie* validity because, among other things, they are wholly unsubstantiated. Accordingly, Randal Gindi requests that the Disputed Claims be disallowed and expunged in their entirety.

## II. The Disputed Claims Are Unenforceable Against the Debtors

46. Section 502(b) of the Bankruptcy Code proscribes the grounds on which a proof of claim may be disallowed and provides, in pertinent part:

> [e]xcept as expressly provided in subsection (e)(2),(f),(g),(h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, **except to the extent that** –
>
> (1) **such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law** for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1) (emphasis added).

47. Here, Zachary Gindi, on behalf of 385G, expressly agreed that his entitlement to a return of the Deposit would be forfeited if he failed to close by October 31, 2024 or if Ladder terminated the forbearance under the Amended Forbearance Agreement.

A. **Neither Zachary Gindi Nor 385G LLC Is Not Entitled to a Return of the Deposit**

48. The express terms of the G385 Purchase Agreement provide for the relinquishment of the Deposit. Section 16(A) of the 385G Purchase Agreement provides that:

> If this transaction shall not close as a result of Purchaser's default hereunder, the Deposit shall be retained by [385 Greenwich Debtor] as and for liquidated damages. Seller shall have no further rights or remedies as a result of such default, either at law or in equity, and the parties shall have no further obligations to each other hereunder. The parties agree that, since it would be impossible to ascertain the amount of damages in the event of such default by Purchase, the Deposit would constitute a fair and reasonable sum to compensate [385 Greenwich Debtor] for such damages.

Ex. 4 (385G Purchase Agreement), § 16(A).

49. Additionally, section 16(D) of the 385G Purchase Agreement provides that:

> Notwithstanding anything to the contrary in the Agreement, including, without limitation any TIME BEING OF THE ESSENCE provisions, this Agreement shall terminate in full and **Purchaser understands and agrees Purchaser shall have no rights to** proceed under this Agreement to purchase the Premises or **obtain a return of the deposit in the event that the Amended and Restated Forbearance Agreement dated as of [October 2, 2024] by and among Ladder, 90 Nassau Street LLC, 385 Greenwich Street LLC, Zachary Gindi and Randal Gindi is terminated by Ladder** in accordance with Section 6 thereof.

Ex. 4 (385G Purchase Agreement), § 16(D) (emphasis added).

50. Zachary Gindi and his entity, 385G failed to close the purchase of 385 Greenwich by October 31, 2024. Because the sale failed to close within the timeframe required by Ladder, the forbearance under the Amended Forbearance Agreement was terminated and the Deposit was forfeited.

### B. 385G LLC Is Not Entitled to Damages as the Breaching Party

51. The 385G Purchase Agreement provides a liquidated damages provision governing 385G's remedies <u>in the event of a breach by 385 Greenwich Debtor</u>, which limits 385G's remedies to either (i) return of the Deposit, or (ii) specific performance, provided that a claim for specific performance is asserted within 90 days following such breach. *See* Section 16(C) of the Agreement. Section 16(C) provides:

> In the event of a default hereunder by Seller and subject to the provisions of Section 5(B) [title matters], Purchaser shall, in Purchaser's sole discretion, as its sole and exclusive remedy, be entitled to (i) enforce specific performance of Seller's obligation to convey the Premises, provided, however, that any such action by must commenced [sic], if at all, within ninety (90) days after Seller's breach, TIME BEING OF THE ESSENCE, the failure of which shall constitute a waiver by Purchaser of such right and remedy; or (ii) terminate this Agreement and receive a return of the Deposit, plus purchaser's expenses."

Ex. 3 (385G Purchase Agreement), § 16(C).

52. Importantly, 385 Greenwich Debtor did not breach its obligations under the 385G Purchase Agreement. <u>385G failed to close by the time of essence deadline of October 31, 2024.</u>[7] When a party to a real estate contract declares time of the essence in setting a closing date, a failure of performance on that date constitutes a default. *See Donerail Corp. N.V. v. 405 Park LLC*, 952 N.Y.S.2d 137 (1st Dept. 2012).

53. And irrespective of which party breached the contract, the 385G Purchase Agreement clearly provided for forfeiture of the Deposit in the event that Ladder terminated the forbearance under the Amended Forbearance Agreement. *See* Ex. 3 (Amended Forbearance Agreement), § 16(D). Section 16(D) provides:

> Notwithstanding anything to the contrary in the Agreement . . . **Purchaser shall have no rights to** proceed under this Agreement to purchase the Premises or **obtain a return of the Deposit in the event that the Amended and Restated Forbearance Agreement dated as of [October 2, 2024] by and among Ladder, 90 Nassau Street LLC, 385 Greenwich Street LLC, Zachary Gindi and Randal Gindi is terminated by Ladder** in accordance with Section 6 thereof.

Ex. 3 (385G Purchase Agreement), § 16(D) (emphasis added).[8]

54. Further, Section 2(iii) of the 385G Purchase Agreement provides that:

---

[7] 385G also failed to consummate its successful bid following the bankruptcy auction sale of 385 Greenwich Property by failing to pay the 10% deposit within the timeframe required by the bidding procedures. *See* Auction Tr., 46:6-14 [385 Greenwich Debtor Case No. 25-41127, ECF Dkt. 25]. Pursuant to Order approving the sale of the 385 Greenwich Property [385 Greenwich Case No. 25-41127, ECF Dkt No. 31], Greg Spatz closed the sale in the amount of $8,500,000.

[8] Indeed, Ladder has also taken the position in this case that 385G forfeited any entitlement to a return of the Deposit. *See* Auction Tr., 20:4-13 [385 Greenwich Debtor Case No. 25-41127, ECF Dkt. 25].

> Buyer agrees and consents that One Million dollars . . . of the Deposit shall be immediately available to Seller for Seller to transfer in full to its lender . . . as a non-refundable payment towards the outstanding liabilities owed to Ladder in consideration for Ladder's approval to consent to the sale of the Premises to Purchaser and to extend the forbearance period for Seller to repay amounts due to Ladder.

Ex. 3 (385G Purchase Agreement), § 2(iii).

55. Based on the clear and unequivocal language of the 385G Purchase Agreement, 385G is not entitled to a return of the Deposit. Accordingly, to the extent the 385G Claims assert a claim of entitlement to damages based on 385G Greenwich Debtor's breach of the 385G Purchase Agreement including a return of the Deposit, such claim must be disallowed.

56. Apart from the contract provisions providing this Court with a sound basis for disallowance, the 385G Claims should be disallowed based on well settled New York decisional law in the context of real estate contract breaches. In New York, a buyer's damages for breach of a commercial real estate contract is the difference between the contract price and the fair market value of the property at the time of the breach. *See Brickstone Grp., Ltd. v. Randall*, 172 A.D.3d 671, 672 (2d Dep't 2019) ("Where the proof establishes that a purchaser of real property was ready and willing to proceed, yet the vendor failed to perform, in bad faith, or willfully disregarded the contract, the purchaser may recover the loss of his or her bargain.") (citations omitted). Here, 385G was not ready and willing to proceed with the sale of 385 Greenwich within the timeframe required. 385 Greenwich Debtor did not fail to perform in bad faith or in willful disregard of its obligations under the 385G Purchase Agreement. 385G, as the breaching party, is not entitled to damages.

57. Accordingly, by this Objection, Randal Gindi requests that the Disputed Claims be disallowed and expunged in their entirety pursuant to Section 502 of the Bankruptcy Code,

Rules 3003 and 3007 of the Bankruptcy Rules and Rule 3007-1 of the Local Bankruptcy Rules and moves for an entry of an Order.

## NOTICE

58. Pursuant to Bankruptcy Rule 3007, Randal Gindi will provide at least thirty (30) days' notice of this Objection to: (i) Zachary Gindi and 385G; (ii) the Office of the United States Trustee for the Eastern District of New York; and (iii) all parties who have filed notices of appearance in the cases as of the date hereof (by filing and notice through the ECF system).

## CONCLUSION

WHEREFORE, Randal Gindi respectfully requests the disallowance and expungement, as applicable, of the claims identified herein, and such other and further relief as is deemed just and proper.

Dated: Garden City, New York
       October 7, 2025

                      MORITT HOCK & HAMROFF LLP

                      By: /s/ Theresa A. Driscoll
                            Theresa A. Driscoll
                            400 Garden City Plaza
                            Garden City, New York 11530
                            (516) 873-2000

                      *Counsel to Randal Gindi*